# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW N. FULTON, DDS, P.C., individually and as the representative of a class of similarly-situated persons, | ) ) ) Case No. 16-CV-13777 ) |
| Plaintiff, | ) ) |
| v. | ) District Judge Denise Page Hood ) Magistrate Judge R. Steven Whalen |
| ENCLARITY, INC., LEXISNEXIS RISK SOLUTIONS INC., LEXISNEXIS RISK SOLUTIONS GA INC., LEXISNEXIS RISK SOLUTIONS FL INC., and JOHN DOES 1-12, | ) ) ) ) ) PUTATIVE CLASS ACTION ) ) |
| Defendants. | ) ) ) |

## DEFENDANTS' MOTION TO DISMISS

Defendants Enclarity, Inc., LexisNexis Risk Solutions Inc., LexisNexis Risk

Solutions GA Inc., and LexisNexis Risk Solutions FL Inc., Inc. respectfully move,

pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's

complaint for failure to state a claim upon which relief can be granted.  Taking the

facts pled in the complaint as true, Plaintiff fails to allege valid causes of action

because the facsimile Plaintiff allegedly received is not an advertisement as

defined and regulated by the relevant provisions of the Telephone Consumer

Protection Act, 47 U.S.C. § 227(a)(5), (b)(1)(C), and the sending of this fax is not

i

conversion as a matter of law.  This Motion is based on the Brief in support being filed concurrently herein, the pleadings, records, and files in this action, and on such argument that may be presented at a hearing on this motion.  Defendants have, through counsel, contacted opposing counsel to seek concurrence before filing this motion.  Opposing counsel has indicated that Plaintiff will oppose this motion.

Defendants respectfully request that the Court dismiss Plaintiff Matthew N. Fulton's Complaint (ECF No. 1) in its entirety with prejudice under Rule 12(b)(6) because Plaintiff cannot state a claim and no amendment can cure the deficiencies in the Complaint, as well as grant all other relief to which they are entitled.

Dated:  December 16, 2016        MORRISON & FOERSTER LLP

By:  */s/ Tiffany Cheung*
      Tiffany Cheung

TIFFANY CHEUNG (CA SBN 211497)
BEN PATTERSON (CA SBN 268696)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
TCheung@mofo.com
BPatterson@mofo.com

AMY SABBOTA GOTTLIEB (P67020)
DICKINSON WRIGHT PLLC
2600 West Big Beaver Rd., Suite 300
Troy, MI 48004
Telephone: 248.433.72860
agottlieb@dickinsonwright.com

Attorneys for Defendants
ENCLARITY, INC., LEXISNEXIS RISK
SOLUTIONS INC., LEXISNEXIS RISK
SOLUTIONS GA INC., LEXISNEXIS
RISK SOLUTIONS FL INC.

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## ISSUES PRESENTED

(1)     Whether the Court should dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's claim that Defendants sent a fax in violation of the Telephone Consumer Protection Act ("TCPA") because the alleged fax, which Plaintiff attached to the Complaint, is not an advertisement and thus not subject to the TCPA; and

(2)     Whether the Court should dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's claim that Defendants are liable for conversion of Plaintiff's paper, toner, and use of its fax machine allegedly by sending Plaintiff a single fax.

## CONTROLLING AND APPROPRIATE AUTHORITY

Federal Rule of Civil Procedure 12(b)(6) and 47 U.S.C. § 227(b)(1)(C) (providing that the relevant provisions of the TCPA apply only to an "unsolicited advertisement"), as well as the extensive case law discussed below, compel dismissal of Plaintiff's Complaint.

# TABLE OF CONTENTS

**Page**

ISSUES PRESENTED.................................................................................iv

CONTROLLING AND APPROPRIATE AUTHORITY .......................... v

TABLE OF AUTHORITIES ................................................................viii

BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS ................. 1

I.     BACKGROUND ........................................................................ 2

II.    LEGAL STANDARD ................................................................ 4

III.   ARGUMENT.............................................................................. 5

     A.    The TCPA's Fax Provision Applies Only to
Advertisements........................................................................ 5

     B.    The Fax Here Is Not An Advertisement Under the TCPA. ............... 7

     C.    Alleged Subsequent Uses of Information Cannot Convert
a Fax Into an Advertisement. ........................................... 11

          1.    Alleged Subsequent Use of Provider Information
in Defendants' Products Cannot Convert a
Verification Fax into an Advertisement................................. 11

          2.    Speculation About the Subsequent Use of
Information for Hypothetical Marketing Cannot
Convert a Verification Fax into an Advertisement............... 13

     D.    Defendants Did Not Convert Plaintiff's Property as a
Matter of Law........................................................................ 16

          1.    The Court Should Decline to Exercise
Supplemental Jurisdiction Over the State Law
Conversion Claim. ................................................................. 16

2.      Plaintiff Cannot Allege That Defendants
        "Wrongfully" Caused Any Serious, Major, and
        Important Interference with Property. ................................... 16

IV.   CONCLUSION ............................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & L Indus. v. P. Cipollini, Inc.*,
   No. 12-07598 (SRC), 2014 U.S. Dist. LEXIS 99285 (D.N.J.
   July 22, 2014) .......................................................................................... 16

*Alleman v. Yellowbook*,
   No. 12-cv-1300-DRH-PMF, 2013 U.S. Dist. LEXIS 127212 (S.D.
   Ill. Sept. 6, 2013) ............................................................................... 10, 15

*Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst., Inc.*,
   222 F. App'x 530 (8th Cir. 2007) ........................................................... 6

*ARcare v. IMS Health, Inc.*,
   No. 16CV00080-JLH, 2016 U.S. Dist. LEXIS 125262 (E.D. Ark.
   Sept. 15, 2016) ..................................................................................... 8, 15

*Aroma Wines & Equipment, Inc. v. Columbian Dist. Servs., Inc.*,
   871 N.W.2d 136 (Mich. S. Ct. 2015) ..................................................... 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 4, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................... 4, 5

*Fed. Home Loan Mortg. Corp. v. Montague*,
   No. 13-CV-1162, 2014 U.S. Dist. LEXIS 121824 (W.D. Mich.
   Sept. 2, 2014) ....................................................................................... 4, 15

*Gjokaj v. HSBC Mortg. Servs., Inc.*,
   602 F. App'x 275 (6th Cir. 2015) ............................................................ 4

*G.M. Sign, Inc. v. Stergo*,
   681 F. Supp. 2d 929 (N.D. Ill. 2009) .................................................... 18

*Izsak v. Draftkings, Inc.*,
   No. 14-cv-07952, 2016 U.S. Dist. LEXIS 76217 (N.D. Ill. June 13,
   2016) ....................................................................................................... 18

*Lawsuit Financial, LLC v. Curry*,
    683 N.W.2d 233 (Mich. Ct. App. 2004)............................................................16

*N.B. Indus., Inc. v. Wells Fargo & Co.*,
    465 F. App'x 640 (9th Cir. 2012) ....................................................................6

*N.B. Indus. v. Wells Fargo & Co.*,
    No. C 10-03203 LB, 2010 U.S. Dist. LEXIS 126432 (N.D. Cal.
    Nov. 30, 2010) ........................................................................................14, 15

*Neurocare Inst. of Cent. Fla., P.A. v. Healthtap, Inc.*,
    8 F. Supp. 3d 1362 (M.D. Fla. 2014)................................................................18

*P&S Printing LLC v. Tubelite, Inc.*,
    No. 14-cv-1441 (VAB), 2015 U.S. Dist. LEXIS 93060 (D. Conn.
    July 17, 2015)..........................................................................................7

*PCA Minerals LLC v. Merit Energy Co.*,
    No. 1:13-cv-1243, 2015 U.S. Dist. LEXIS 97945 (W.D. Mich. July
    28, 2015) ..............................................................................................5

*Phillips Randolph Enters., L.L.C. v. Adler-Weiner Research Chicago,
    Inc.*,
    526 F. Supp. 2d 851 (N.D. Ill. 2007)................................................................7

*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*,
    No. 12-2132 (FLW), 2013 U.S. Dist. LEXIS 15952 (D.N.J. Feb. 6,
    2013) ..................................................................................................14

*Physicians Healthsource, Inc. v. Multiplan Servs.*,
    No. 12-11693-GAO, 2013 U.S. Dist. LEXIS 133397 (D. Mass.
    Sept. 18, 2013)........................................................................................7

*Rosen Family Chiropractic, S.C. v. Chi-Town Pizza on Div. St., Inc.*,
    No. 11 C 6753, 2013 U.S. Dist. LEXIS 6385 (N.D. Ill. Jan. 16,
    2013) ..................................................................................................2

*Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, Inc.*,
    443 F. Supp. 2d 976 (N.D. Ill. 2006)................................................................18

*Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*,
    788 F.3d 218 (6th Cir. 2015) .....................................................................*passim*

*Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*,
No. 14CV00583, 2014 U.S. Dist. LEXIS 166777 (N.D. Ohio Dec.
2, 2014) .................................................................................................. 13

*SFS Check, LLC v. First Bank of Del.*,
774 F.3d 351 (6th Cir. 2014) ................................................................. 19

*Siding & Insulation Co. v. Alco Vending, Inc.*,
No. 1:11-CV-01060, 2014 U.S. Dist. LEXIS 183593 (N.D. Ohio
Feb. 6, 2014) ......................................................................................... 16

*Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*,
633 F. Supp. 2d 610 (N.D. Ill. 2009) ..................................................... 18

*Supply Pro Sorbents, LLC v. RingCentral, Inc.*,
No. C 16-02113 JSW, 2016 U.S. Dist. LEXIS 140033 (N.D. Cal.
Oct. 7, 2016) ......................................................................................... 17

*Williams v. CitiMortgage, Inc.*,
No. 08-cv-368, 2011 U.S. Dist. LEXIS 35800 (S.D. Ohio March
31, 2011) ............................................................................................5, 12

*Wright v. Medtronic, Inc.*,
81 F. Supp. 3d 600 (W.D. Mich. 2015) .................................................. 4

## Statutes

28 U.S.C. § 1331 ........................................................................................... 16

47 U.S.C.
§ 227.......................................................................................................16
§ 227(a)(5) ....................................................................................1, 10, 14
§ 227(b)(1)(C) ...................................................................................4, 5, 6

Fed. R. Civ. P. § 12(b)(6).............................................................................. 4

## Other Authorities

Restatement (Second) of Torts § 222A, cmt. C (1965) ........................... 17

## <u>BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

The Telephone Consumer Protection Act ("TCPA") does not apply to every fax that any company may send, for any purpose.  Rather, the TCPA applies only to the sending of faxes that "advertis[e] the commercial availability or quality of any property, goods, or services . . ." 47 U.S.C. § 227(a)(5)—that is, *advertising* faxes.  Such advertising material must be "transmitted" to a person to fall within the TCPA.  *Id*.  Plaintiff Matthew N. Fulton, DDS, P.C., alleges that Defendants violated the TCPA, and wrongfully converted its paper, toner, and fax machine, by sending a single fax that Plaintiff stretches to characterize as "advertising."

But the fax at issue is not an advertisement.  It does not "advertis[e] the commercial availability or quality of any property, goods, or services," *id*., and is not a pretext to any such advertising.  Instead, by its plain language, the fax seeks only to verify or validate location, practice, and contact information about the specifically identified healthcare provider to which the fax is directed.  This fact is evident on the face of the fax that Plaintiff attached as an exhibit to the Complaint and in the Complaint itself.  Accordingly, Plaintiff cannot state a claim under the TCPA.  Plaintiff also fails to state a claim for conversion and, in any event, Plaintiff has not established that this Court has jurisdiction over its state law conversion claim.

Because amending the Complaint cannot change the legal status of this fax, the Complaint should be dismissed with prejudice in its entirety.  In the alternative, the Court should dismiss Plaintiff's TCPA claim with prejudice and decline to exercise supplemental jurisdiction over the remaining state law conversion claim.[1]

## I.    BACKGROUND

Plaintiff, a dental practice in Linden, Michigan, alleges that Defendants sent and Plaintiff received one fax, which Plaintiff attaches as Exhibit A to the Complaint.  (ECF No. 1 ("Comp.") Ex. A.)  Plaintiff's *own characterization of the purpose of the fax* demonstrates that it is not an advertising fax.  Plaintiff describes the fax as "seeking to gather valuable information from health professionals" for a "proprietary database" that is then sold or offered "to Defendants' clients in the health care industry."  (Comp. ¶¶ 28, 61.)  The fax did ***not***, by Plaintiff's admission, offer to sell anything to Plaintiff.  Plaintiff mischaracterizes the fax as "gathering" (rather than verifying) information, but fundamentally relies on the theory that the purpose of the fax relates to *information* that is then incorporated

---

[1] This Motion is filed collectively by Defendants Enclarity, Inc., LexisNexis Risk Solutions Inc., LexisNexis Risk Solutions GA Inc., and LexisNexis Risk Solutions FL Inc., though each Defendant individually, and the Defendants collectively, expressly reserve all rights and defenses, including (but not limited to) the Plaintiff's improper naming of defendants.  Because the entire Complaint should be dismissed on the grounds that the fax is not an advertisement, Defendants do not burden the Court with these additional arguments at this time.  If the case proceeds beyond the pleadings, all improperly named Defendants should be dismissed.  *See, e.g.*, *Rosen Family Chiropractic, S.C. v. Chi-Town Pizza on Div. St., Inc.*, No. 11 C 6753, 2013 U.S. Dist. LEXIS 6385, at *6 (N.D. Ill. Jan. 16, 2013).

into products offered to *other entities*, through *other channels*.  The actual content

of the fax confirms that it seeks only to verify information about the recipient:



The fax includes the contact information for the recipient (i.e., provider

name, address, practice phone, and secure fax number) and states in the "Re" line

near the top that it seeks to *verify* this information (i.e., "Fax Number Verification

for Delivery of Patient PHI [Protected Health Information] . . ."). (*Id.* Ex. A.)  The

fax expressly requests cooperation to "verify or update" the provider's listed

contact information for use by other entities "for clinical summaries, prescription

3

renewals, and other sensitive communications." (*Id.*)  The fax offers no product or service to Plaintiff.

Based on the receipt of a single non-advertising fax, Plaintiff purports to represent a putative class of all persons who received a similar verification fax. Plaintiff asserts one cause of action under the TCPA, 47 U.S.C. § 227(b)(1)(C) (*id.* ¶ 64), and a second cause of action for common law "conversion" of Plaintiff's fax machine, paper and toner, and time  (*Id.* ¶ 80).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), to survive a motion to dismiss a plaintiff must "allege[] facts that . . . are sufficient to 'raise a right to relief above the speculative level.'"  *Wright v. Medtronic, Inc.*, 81 F. Supp. 3d 600, 605 (W.D. Mich. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).  The Complaint must provide "more than labels and conclusions," *Bell Atl. Corp.*, 550 U.S. at 555, and, in turn, "'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'"  *Gjokaj v. HSBC Mortg. Servs., Inc.*, 602 F. App'x 275, 277 (6th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When ruling on a 12(b)(6) motion, courts may "consider the exhibits attached to the complaint."  *Fed. Home Loan Mortg. Corp. v. Montague*, No. 13-CV-1162, 2014 U.S. Dist. LEXIS 121824, at *7 (W.D. Mich. Sept. 2, 2014).  And,

"if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document" and is "not bound to accept as true a legal conclusion couched as a factual allegation." *Williams v. CitiMortgage, Inc.*, No. 08-cv-368, 2011 U.S. Dist. LEXIS 35800, at *13 (S.D. Ohio March 31, 2011) (citing *Nat'l Ass'n of Minority Contractors, Dayton Chapter v. Martinez*, 248 F. Supp. 2d 679, 681 (S.D. Ohio 2002); *Twombly*, 550 U.S. at 555; *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A plaintiff can also "plead himself out of court" by assertions of fact in a pleading that undermine its claims.  *PCA Minerals LLC v. Merit Energy Co.*, No. 1:13-cv-1243, 2015 U.S. Dist. LEXIS 97945, at *15 n.5 (W.D. Mich. July 28, 2015).

Whether a fax's contents meet the definition of "advertising" under the TCPA is a question of law.  *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 221 (6th Cir. 2015) ("So were these faxes advertisements?  It is a question of law . . .").

## III.   ARGUMENT

### A.   The TCPA's Fax Provision Applies Only to Advertisements.

To prove a violation of the TCPA, a plaintiff must establish that the defendant sent "to a telephone facsimile machine, an unsolicited *advertisement*." 47 U.S.C. § 227(b)(1)(C) (TCPA subsection codifying the Junk Fax Prevention Act of 2005) (emphasis added).  A plaintiff "fail[s] to state a claim upon which

relief could be granted [where] the facsimile attached to the complaint does not constitute an 'unsolicited advertisement' pursuant to the TCPA." *Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst., Inc.*, 222 F. App'x 530, 531 (8th Cir. 2007); *see also N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 F. App'x 640, 643 (9th Cir. 2012) (affirming dismissal with prejudice because faxes "were not, overall, advertisements within the meaning of JFPA [Junk Fax Prevention Act]").

The TCPA defines an "unsolicited advertisement" as "any material ***advertising* the *commercial availability or quality of any property, goods, or services*** which is ***transmitted*** to any person. . . ." 47 U.S.C. § 227(a)(5) (emphasis added). The Sixth Circuit has elaborated that to be an "advertisement" the material must unambiguously contain "commercial" components: "***the fax must promote goods or services that are for sale***, and the sender must have profit as an aim." *Sandusky*, 788 F.3d at 223-24 (affirming summary judgment because faxes were not "advertisements" under the TCPA) (emphasis added). The fax must "dra[w] the public's attention to something to promote its sale" or constitute "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public[.]" *Sandusky*, 788 F.3d at 221-22 (citation omitted).

Where it is evident on the face of the fax that it is not an advertisement, courts have dismissed TCPA claims at the pleading stage because the relevant provisions apply only to an "unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C);

*see, e.g.*, *P&S Printing LLC v. Tubelite, Inc.*, No. 14-cv-1441 (VAB), 2015 U.S. Dist. LEXIS 93060, at *11-12 (D. Conn. July 17, 2015) (holding that the "fax's primary purpose, on its face, was to communicate information to current customers about a change in delivery schedule" and it "does not constitute an 'advertisement' as a matter of law, because it does not tend to propose a commercial transaction and does not appear on its face to have been sent based on a commercial pretext"); *Physicians Healthsource, Inc. v. Multiplan Servs.*, No. 12-11693-GAO, 2013 U.S. Dist. LEXIS 133397, at *4 (D. Mass. Sept. 18, 2013) (granting motion to dismiss where "the text of the facsimile does not support [the] conclusory allegation" that the "facsimile is an advertisement promoting defendants' services"); *Phillips Randolph Enters., L.L.C. v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (granting motion to dismiss where, "[o]n its face, the fax does not promote a 'commercially available service,' but a research study").

### B.    The Fax Here Is Not An Advertisement Under the TCPA.

Despite Plaintiff's allegation to the contrary, the fax at issue is not an "advertisement" under the TCPA.  There is ***no product or service*** being promoted or sold to the fax recipient through the fax, and no commercial transaction is contemplated.  The passing mention in the fax that the verified information may ultimately be used by ***other entities*** cannot turn a fax seeking verification into an

advertisement—there is simply no product or service being offered to the recipient or anyone else.

In a virtually identical case, a court recently held that substantially similar verification faxes seeking to verify the recipient medical provider's "address, phone number, fax number, office manager, and website" were "non-commercial messages" and thus "not a direct commercial solicitation." *ARcare v. IMS Health, Inc.*, No. 16CV00080-JLH, 2016 U.S. Dist. LEXIS 125262, at *2, 9 (E.D. Ark. Sept. 15, 2016) (granting motion to dismiss and entering judgment). The court expressly rejected the plaintiff's attempt to argue that the faxes were advertisements on the grounds that they "inform[ed] the recipient" that the defendant's services were "commercially available" when all the fax did was briefly and generally describe the services the sender offered *to others*. *Id.* at *9. In holding that the faxes were ***not*** advertisements, the court reasoned that the fax did not indicate "where or how" the category of services *described in the fax* was "available for purchase by the fax recipient." *Id.* at *9.

Similarly, the fax at issue here explains in general terms that verified information may be used by other entities "for clinical summaries, prescription renewals, and other sensitive communications" (Comp. Ex. A).[2] But the fax does

---

[2] In search of a theory, Plaintiff alleges that the fax "claim[s] that fax recipients will benefit from Defendants' services by receiving fewer telephone calls . . . that claims and medical bills will be paid more quickly . . . and that important

*not* offer these services for purchase by the fax recipient.  Plaintiff cannot allege "where or how" the category of services described in the fax are "available for *purchase by the fax recipient*."  Under **binding Sixth Circuit authority**, faxes "are not ads when they don't . . . sell things to the recipient."  *Sandusky*, 788 F.3d at 223 (citing *Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*, No. 1:09-CV-1076-RWS, 2011 U.S. Dist. LEXIS 12166, at *3-*4 (N.D. Ga. 2011)).

All the fax does is provide the actual information to be verified (i.e., provider name, address, practice phone, and secure fax).  (Comp. Ex. A.)  It provides a means for verification via a check box that states "YES - ALL of the printed information shown above is CORRECT and secure for communications containing PHI," and a check box for updating incorrect information, which states "NO - Updated info Below / Not at this location / Deceased (please circle)."  (*Id.*)  The fax also provides a number to which the completed informational form can be faxed back, as well as—at the very bottom of the page—a website address (www.enclarity.com/providerfaqs.php) and a phone number, (612) 746-2853.  (*Id.*)

---

correspondence will be sent to the current address."  (Comp. ¶ 31.)  The fax says no such thing.  Plaintiff conjures these allegations from statements in an alleged "FAQ" document that Plaintiff alleges is accessible from an unidentified website that does not even appear on the fax.  (*Id.* Ex. B.)  Plaintiff offers no plausible explanation as to how statements in this FAQ could be ascribed to—or incorporated into—the fax itself.  In any event, even these remote statements disconnected from the fax are not attempting to sell any product or service to medical providers like Plaintiff; they merely explain the benefits to medical providers when insurers and others have verified and up-to-date contact information.

The fax itself does not even suggest any offer of a commercial transaction with the recipient.  The fax does not contain any invitation to call a phone number or visit a website to learn more about any goods or services offered to the recipient.[3]  The fax does not offer a steak dinner, nor is it an invitation to a seminar or a cocktail hour, nor does it offer any other free service to the recipient.  The face of the fax demonstrates that it is not an advertisement, but rather a communication sent to verify contact information.

Other courts in TCPA cases have similarly affirmed that communications seeking to verify information are not "unsolicited advertisements."  In *Alleman v. Yellowbook*, No. 12-cv-1300-DRH-PMF, 2013 U.S. Dist. LEXIS 127212, at *6-7 (S.D. Ill. Sept. 6, 2013), for example, the court dismissed the complaint with prejudice, finding that a phone call to verify information was not an "unsolicited advertisement."[4]  The court noted, specifically, that the text of the communication "contain[ed] no inclination that it is 'motivated in part by the desire to ultimately sell additional goods or services . . . either during the call, or in the future.'"  *Id.* at *16-17 (citing *In the Matter of Rules and Regulations Implementing the TCPA*, 18

---

[3] Even if someone navigated to the website appearing once at the very bottom of the fax, that website leads to a form by which a request can be made to opt out of receiving future informational faxes.  (Comp. ¶40.)

[4] The same definition of "unsolicited advertisement" applies to both faxes and calls under the TCPA.  47 U.S.C. § 227(a)(5); *see also Yellowbook*, 2013 U.S. Dist. LEXIS 127212, at *8 (applying 47 U.S.C. § 227(a)(5) "unsolicited advertisement" definition for phone calls).

FCC Rcd. 14014, 14098 ¶ 142 (July 3, 2003)).  The court continued that, "[o]n its face, the call is not part of a marketing campaign to sell additional products or service" and instead, its intent was to verify something—that the free Yellowbook directory had been received.  *Id.* at *17.  The same holds true here.

### C.   Alleged Subsequent Uses of Information Cannot Convert a Fax Into an Advertisement.

Without an offer of ***anything*** in the fax, Plaintiff is left to assert the unsupported theories that the fax is an advertisement because Defendants may: (1) sell products and services to other entities that are Defendants' clients; or (2) at some hypothetical point in the future, perhaps advertise other (unnamed, unidentified) products or services to fax recipients.  (Comp. ¶¶ 30, 31, 37, 38.)  But regardless of what may happen downstream, Plaintiff acknowledges that the purpose of the fax is to collect the provider's information—undermining its own allegation that the fax is selling goods or services to the fax recipient.  And, in any event, "speculative down-the-stream evidence" about what Defendants might do with the verified information "cannot convert non-ads into ads."  *See Sandusky*, 788 F.3d at 225.

### 1.   Alleged Subsequent Use of Provider Information in Defendants' Products Cannot Convert a Verification Fax into an Advertisement.

Allegations regarding future uses of information do not make a TCPA "advertisement":  "The possibility that future economic benefits will flow from a

non-commercial fax, ancillary to the content of the fax, is legally irrelevant to determining whether the fax is an ad." *Sandusky*, 788 F.3d at 225.

The fax itself, which already lists Plaintiff's contact information, indicates that its purpose is solely for verification. The fax thus flatly contradicts Plaintiff's allegation that it "*promotes* the commercial availability of Defendants' proprietary Master Provider Referential Database." (Comp. ¶ 38 (emphasis added).) No such database is referenced in the fax; nor is there any offer or enticement to obtain more information about this or any of Defendants' other products. "[W]hen a written instrument"—like the fax at issue here—"contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'" *Williams*, 2011 U.S. Dist. LEXIS 35800, at *12 (citing *N. Indiana Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998)).

The Sixth Circuit's decision in *Sandusky* is directly on-point and compels dismissal here. Like this case, the fax sender there sold products, but those products ***were not being advertised nor sold to the fax recipient*** in the relevant fax. *Sandusky*, 788 F.3d at 222. The court reasoned that the faxes did not "promote the drugs or services in a commercial sense—they're not sent with hopes to make a profit, directly or indirectly, from Sandusky or the others similarly situated." *Id.* at 222. The defendant did not hope "to attract clients or customers by sending the faxes." Instead, the faxes listed "drugs in a purely informational,

non-pecuniary sense: to inform [the health provider plaintiff] what drugs its patients might prefer, based on Medco's formulary—a paid service already rendered not to [the plaintiff] *but to Medco's clients*." *Id.* (emphasis added).[5]

Likewise, the fax here does not promote services to the fax recipient and allegedly requested information for a paid service rendered not to the Plaintiff but to LexisNexis's clients. Plaintiff's contrary characterizations that the fax promotes Defendants' products amount to nothing more than legal conclusions that cannot state a claim. *See, e.g., Iqbal*, 556 U.S. at 678.

### 2. Speculation About the Subsequent Use of Information for Hypothetical Marketing Cannot Convert a Verification Fax into an Advertisement.

Plaintiff also suggests that this fax is an advertisement because at some future point Defendants (or others) may allegedly send a marketing fax to Plaintiff

---

[5] Although *Sandusky* was decided on summary judgment, the court had no occasion to consider the issue on the pleadings because Medco did not file a motion to dismiss. Medco answered the complaint and then filed a motion for summary judgment the next day. *See Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, No. 14-cv-00583-JGC, ECF Nos. 19, 20 (N.D. Ohio 2014). In ruling for defendant Medco, the court found that the faxes did "not solicit the sale of anything," and were thus not prohibited under the TCPA. *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, No. 14CV00583, 2014 U.S. Dist. LEXIS 166777, at *5 (N.D. Ohio Dec. 2, 2014), *aff'd*, 788 F.3d 218 (6th Cir. 2015). The court also noted that, in light of the nature of the faxes, the court trusted that the opinion would "serve as a warning to plaintiff and others who receive faxes of this sort, which serve a useful, and not a disruptive or illegal purpose not to file similar fruitless litigation in the future." *Id.* at *5-6 n.1.

about other unknown, unidentified products.[6]  (Comp. ¶ 13.)  Even if this allegation were plausible, it is irrelevant.  A fax does not constitute advertising if it verifies information that may one day be used by another party to send something that might actually be advertising; *the fax itself* must "promote goods or services that are for sale."  *Sandusky*, 788 F.3d at 223-24; *see also Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. 12-2132 (FLW), 2013 U.S. Dist. LEXIS 15952, at * 15 (D.N.J. Feb. 6, 2013) ("[T]he inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits.").  To be covered by the TCPA, the advertising material must be "transmitted" to the plaintiff in the fax received.  47 U.S.C. § 227(a)(5).

Here, the *N.B. Industries* case is directly on point.  Plaintiffs there alleged, in part, that the fact that the fax invited recipients to apply for a reward meant that the sender of the fax would consequently be able to "use the applicant's information for marketing, advertising, and promotional purposes."  *N.B. Indus. v. Wells Fargo*

---

[6] Plaintiff attempts to buttress these allegations—which are not remotely grounded in the fax itself—by including lengthy excerpts from a LexisNexis website terms of use and privacy policy that Plaintiff found in a link in the footer of the website identified at the bottom of the subject fax (Comp. ¶¶ 32–37, Exs. D, F).  These documents provide general information about data collection and potential uses of certain information provided on certain portions of LexisNexis's website.  The general terms and privacy policy regarding use of a company's website cannot transform an unrelated, non-advertising fax sent by that company into an advertising fax.

*& Co.*, No. C 10-03203 LB, 2010 U.S. Dist. LEXIS 126432, at *10 (N.D. Cal. Nov. 30, 2010), *aff'd sub nom. N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 F. App'x 640 (9th Cir. 2012).   The court affirmed that, in this scenario, the potential use of the information for future marketing "does not alter the analysis that the faxes are not advertisements."  2010 U.S. Dist. LEXIS 126432, at *25.

Because the relevant fax does not promote the commercial availability of any product or service, the TCPA claim should be dismissed.  *See, e.g.*, *ARcare*, 2016 U.S. Dist. LEXIS 125262, at *2 (dismissing complaint because faxes seeking to verify providers' contact information were not advertising, and entering judgment); *Yellowbook*, 2013 U.S. Dist. LEXIS 127212, at *11 (finding that claim "requires dismissal" where "the call did not promote or advertise any product for sale, nor did it attempt to persuade or entice plaintiff to buy or invest in any commercially available product, good, or service"); *see also Fed. Home Loan Mortg. Corp.*, 2014 U.S. Dist. LEXIS 121824, at *7 (dismissal is appropriate where exhibits attached to the complaint and relied upon by plaintiff contradict the claims).

### D. Defendants Did Not Convert Plaintiff's Property as a Matter of Law

#### 1. The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Conversion Claim.

As a preliminary matter, Plaintiff alleges subject matter jurisdiction based solely on federal question jurisdiction in reliance on the federal TCPA, 28 U.S.C. § 1331 and 47 U.S.C. § 227. (Comp. ¶ 22.) Because Plaintiff cannot state a claim under the TCPA, the Court should decline to exercise supplemental jurisdiction over the state law conversion claim. *See, e.g.*, *Siding & Insulation Co. v. Alco Vending, Inc.*, No. 1:11-CV-01060, 2014 U.S. Dist. LEXIS 183593, at *31 (N.D. Ohio Feb. 6, 2014); *A & L Indus. v. P. Cipollini, Inc.*, No. 12-07598 (SRC), 2014 U.S. Dist. LEXIS 99285, at *15 (D.N.J. July 22, 2014) (finding "no circumstances that would justify the exercise of jurisdiction over what is now a purely state law dispute" after dismissing federal TCPA claim).

#### 2. Plaintiff Cannot Allege That Defendants "Wrongfully" Caused Any Serious, Major, and Important Interference with Property.

In any event, Plaintiff has not alleged a conversion claim. Under Michigan law, to establish a claim under common law conversion, Plaintiff must allege and prove a "distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *See Lawsuit Financial, LLC v. Curry*, 683 N.W.2d 233, 240 (Mich. Ct. App. 2004); *accord Aroma Wines & Equipment, Inc. v. Columbian Distr. Servs., Inc.*, 871 N.W.2d 136,

16

144 (Mich. S. Ct. 2015) ("the scope of a common-law conversion is now well-settled in Michigan law").  To constitute conversion, a person must wrongfully exert dominion or control over another's property.

Here, Plaintiff does not allege that Defendants wrongfully exerted dominion or control over its fax machine, but makes only conclusory allegations that its fax machine, paper, toner and time were "converted" to Defendants' own use.  (Comp. ¶ 80.)  Moreover, as discussed above, the sending of the fax at issue was not "wrongful," and indeed was permitted under applicable law.  Thus, Plaintiff fails to state a conversion claim under Michigan common law.  *See, e.g.*, *Supply Pro Sorbents, LLC v. RingCentral, Inc.*, No. C 16-02113 JSW, 2016 U.S. Dist. LEXIS 140033, at *13 (N.D. Cal. Oct. 7, 2016) (reasoning that "[e]ven if the Court accepts the minimal use of Plaintiff's paper and toner and employee time used on . . . a four-page fax qualifies as unauthorized use of the Plaintiff's property, such property never . . .  was unlawfully held in such a way as to indicate that Defendant assumed control, dominion or ownership of the property") (internal quotations omitted).

Indeed, "[c]onversion is . . . properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value."  Restatement (Second) of Torts § 222A, cmt. C (1965).  A number of courts have thus dismissed

conversion claims arising out of allegedly unsolicited faxes on the grounds that, for example, the alleged conversion of fax machines, toner, paper, and employee time when printing a fax "is not serious, major, or important" and thus fails to rise to the level of a conversion claim. *Neurocare Inst. of Cent. Fla., P.A. v. Healthtap, Inc.*, 8 F. Supp. 3d 1362, 1368 (M.D. Fla. 2014). *See also Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.,* 633 F. Supp. 2d 610, 613 (N.D. Ill. 2009) (declining to "entertain plaintiff's trivial claim of conversion" because the damages from the receipt of a one-page fax were "miniscule to the point of nonexistent"); *Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, Inc.,* 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006) ("the ancient maxim '*de minimis non curat lex*' might well have been coined for [the] occasion" of the converted property relating to a one-page fax"); *accord Izsak v. Draftkings, Inc.*, No. 14-cv-07952, 2016 U.S. Dist. LEXIS 76217, at *15 (N.D. Ill. June 13, 2016) (citing cases).

Furthermore, as noted by the *Izsak* court, asserting a conversion claim along with a TCPA claim is redundant because: (1) any alleged loss is *de minimis* and could be remedied by the TCPA claim in any event; and (2) the TCPA provides a cause of action for the conduct alleged in any such conversion claim. *See id.* at *17–18 (citing *Garrett v. Rangle Dental Lab.*, No. 10 C 1315, 2010 U.S. Dist. LEXIS 78175, at *1 (N.D. Ill. Aug. 3, 2010); *G.M. Sign, Inc. v. Stergo*, 681 F. Supp. 2d 929, 934-35 (N.D. Ill. 2009)).

## IV.   CONCLUSION

Plaintiff cannot change the non-advertising nature of the fax, rendering any amendment to the TCPA claim futile.  *See, e.g.*, *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014) ("[C]ourts need not give leave to amend when doing so would be futile").  Plaintiff also fails to allege that the sending of the fax constitutes unlawful conversion under Michigan common law.  Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety with prejudice or, in the alternative, dismiss Plaintiff's TCPA claim with prejudice and decline to exercise supplemental jurisdiction over the remaining state law conversion claim.

Dated:  December 16, 2016             MORRISON & FOERSTER LLP


By: */s/ Tiffany Cheung*
     Tiffany Cheung

TIFFANY CHEUNG (CA SBN 211497)
BEN PATTERSON (CA SBN 268696)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
TCheung@mofo.com
BPatterson@mofo.com

AMY SABBOTA GOTTLIEB (P67020)
DICKINSON WRIGHT PLLC
2600 West Big Beaver Rd., Suite 300
Troy, MI 48004
Telephone: 248.433.72860
agottlieb@dickinsonwright.com

Attorneys for Defendants
ENCLARITY, INC., LEXISNEXIS RISK
SOLUTIONS INC., LEXISNEXIS RISK
SOLUTIONS GA INC., LEXISNEXIS
RISK SOLUTIONS FL INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 16, 2016, I electronically filed the

foregoing paper with the Clerk of the Court using the ECF system which will send

notification of such filing to the following:

> Phillip A. Bock
> BOCK, HATCH, LEWIS & OPPENHEIM, LLC
> 134 N. La Salle Street, Suite 1000
> Chicago, IL 60602
> Telephone: 213-658-5500
> Facsimile:  213-658-5555
> phil@classlawyers.com
>
> Attorneys for MATTHEW N. FULTON, DDS, P.C.

Dated:  December 16, 2016          MORRISON & FOERSTER LLP


By:  */s/ Tiffany Cheung*
     Tiffany Cheung

TIFFANY CHEUNG (CA SBN 211497)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
TCheung@mofo.com

Attorneys for Defendants
ENCLARITY, INC., LEXISNEXIS RISK
SOLUTIONS INC., LEXISNEXIS RISK
SOLUTIONS GA INC., LEXISNEXIS
RISK SOLUTIONS FL INC.

860110