**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MATTHEW N. FULTON, D.D.S., P.C.,
individually and as the representative of
a class of similarly-situated persons,

    Plaintiff,

v.

Case No. 16-13777
HON. DENISE PAGE HOOD

ENCLARITY, INC., LEXISNEXIS
RISK SOLUTIONS INC., LEXISNEXIS
RISK SOLUTIONS GA INC., LEXISNEXIS
RISK SOLUTIONS FL INC., and JOHN
DOES 1-12,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [#18]

**I.    INTRODUCTION**

On October 24, 2016, Plaintiff filed this action, alleging that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the accompanying regulations prescribed by the Federal Communications Commission ("FCC"), 47 C.F.R. § 64.1200 (collectively, the "TCPA"), when Defendants sent Plaintiff an unsolicited facsimile (the "Fax"). On December 16, 2016, the identified Defendants filed a Motion to Dismiss [Dkt. No. 18] pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion is fully briefed, and on February 22, 2017, the Court

held a hearing on Defendants' Motion. For the reasons that follow, the Court grants Defendants' Motion.

## II.     BACKGROUND

Defendants sent the Fax to Plaintiff, a dental practice in Linden, Michigan. A copy of the Fax is set forth below.

 

Provider: Dr. Matthew Norman Fulton, DDS
Address: 401 N Bridge St, Linden, MI 48451
Practice Phone: (810) 735-7815
Secure Fax: (810) 735-1905

Re: Fax Number Verification for Delivery of Patient PHI (Internal ID:34290748)

The purpose of this Fax Verification Request is to help preserve the privacy and security of your patients' Protected Health Information ("PHI"), as defined by the Health Insurance Portability and Accountability Act ("HIPAA"). LexisNexis is seeking your cooperation to verify or update your information. We validate and update the fax in our system so our clients can use them for clinical summaries, prescription renewals, and other sensitive communications. Verifying the practice address, phone number and your secure fax number (s) for this location will minimize the potential privacy risks that could arise from information sent to an unsecured location. As part of our effort to assure that the transmission of PHI, it is vital to verify the information for Dr. Matthew Norman Fulton, DDS is accurate. This information will be verified once each year.

☐ YES - ALL of the printed information shown above is CORRECT and secure for communications containing PHI.

☐ NO - Updated info Below / Not at this location / Deceased (please circle).

Complete if changed:
Practice Address:
Practice Phone:
Provider Email:
Secure Fax:

## SIGN & FAX BACK TO (866) 699-0422

I confirm that the above information is true and correct and safe for communication containing PHI to the best of my knowledge.

Name:
Title(if other than Provider):
Email(if other than Provider):

Signature:

Date:

Comments:

 

www.enclarity.com/providerfaqs.php | (612) 746-2853

Prior to receiving the Fax, Plaintiff did not have a relationship with any of the Defendants.

Plaintiff filed a two-count Complaint. In Count I, Plaintiff alleges Defendants violated the TCPA. In Count II, Plaintiff alleges a state law conversion claim.

### III.   APPLICABLE LAW & ANALYSIS

### A.   Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.     Analysis Regarding TCPA Claim**

Defendants argue that Plaintiff's TCPA does not apply TCPA does not apply to the Fax because it is not an advertiment. Whether a fax constitutes an advertisement under the TCPA is a question of law. *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 221 (6th Cir. 2015) ("So were these faxes advertisements? It is a question of law our court has never addressed").

The TCPA forbids the use of "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."[1] 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(1). The FCC defines "advertisement" as follows:

> We conclude that facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services.

---

[1] It is undisputed that Plaintiff did not solicit, nor did Plaintiff consent to Defendants sending Plaintiff, the Fax.

5

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C.R. 3787, 3814 (April 6, 2016). The *Sandusky* court stated,

> Advertising is "[t]he action of drawing the public's attention to something to promote its sale," Black's Law Dictionary 65 (10th ed. 2014), or "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public," Webster's Third New International Dictionary 31 (1986). So material that advertises something promotes it to the public as *for sale*. For another thing, we know what's advertised–here, the "availability or quality of any property, goods, or services"–must be *commercial* in nature. Commercial means "of, in, or relating to commerce"; "from the point of view of profit: having profit as the primary aim." Webster's Third at 456. It's something that relates to "buying and selling." Black's Law Dictionary 270 (6th ed. 1990). So to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim.

*Sandusky*, 788 F.3d at 221-22 (emphasis in original).

Defendants argue that the plain language of the Fax establishes that it is not an advertisement because it does not "advertis[e] the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5). Defendants assert that the Fax seeks only to verify or validate contact information related to Plaintiff, namely the location, practice, and contract information of Plaintiff (and health care providers who receive like faxes). Defendants maintain that the Fax does not offer any property, goods, or services to Plaintiff, and that Defendants did not and will not sell anything to Plaintiff.

6

Plaintiff argues that the Fax is an advertisement because "Defendants could include [Plaintiff's contact information] in their proprietary database to sell to their subscribers, and so Defendants and their subscribers could advertise and sell their goods to Plaintiff." [Dkt. No. 23, PgID 162] Plaintiff suggests the Fax "was sent to Plaintiff with the goal of ultimately making profit – *i.e.*, the fax was a pretext to obtain consent from Plaintiff so Defendants could later market additional goods and services to Plaintiff, and direct and increase traffic to Defendants' website." *Id.* Plaintiff contends that "the [F]ax was an indirect commercial solicitation or a pretext for a commercial solicitation sent as an overall marketing campaign for the purpose of making a profit." *Id.* Plaintiff cites a case from the Middle District of Florida to support its position. *See Comprehensive Health Care Systems of the Palm Beaches, Inc. v. M3 USA Corp.*, No. 16-cv-80967, 2017 WL 108029, at *3 (S.D. Fla. Jan. 11, 2017). Based on the facts of that case (which are distinguishable from this case, as noted below), the court stated that the "ultimate question of whether Defendant's survey fax is merely a pretext for advertising its good or services is a question of fact not suitable for a disposition as a matter of law upon a motion to dismiss." *Id.*

Plaintiff also states that "[t]he commercial and for-profit reason for the transmission of the [F]ax is revealed on the Lexis Page." [Dkt. No. 23, PgID 161]. Plaintiff argues that the "Lexis Page" contains advertising, whether it be through the

7

"Terms & Conditions," the "Privacy Policy," or the revelation that contact information will be shared with many other entities on the "Lexis Page." [Dkt. No. 23, PgID 163]

The Court finds that the Fax is not actionable under 47 U.S.C. 227(b)(1)(C), as a matter of law. The content of the Fax, on its face, does not constitute an advertisement. *Sandusky*, 788 F.3d at 222 (emphasis added) ("So to be an ad, the fax must promote goods or services to be bought or sold.") Nothing mentioned in the Fax is "available to be bought or sold." *N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 F. App'x 640, 642 (9th Cir. 2012). The Fax does not offer–or even mention–any product, good, or service to Plaintiff, nor does it not offer or solicit any product, good, or service for sale. *See, e.g., Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-20 (8th Cir. 2015) ("the content of the [communications] controlled whether they were 'advertisements,'" and "[b]ecause the messages did not mention property, goods, or services, we agree that they were not advertisements"). For that reason, the Fax "lack[s] the commercial components inherent in ads." *Sandusky*, 788 F.3d at 223; *Vinny's Landscaping, Inc. v. United Auto Credit Corp.*, 2016 WL 4801276, at *8 (E.D. Mich. Sept. 14, 2016) ("there is no dispute that a fax must advertise something" to fall within the TCPA).

Plaintiff's key arguments are inconsistent with the law in the Sixth Circuit.

First, pursuant to *Sandusky*, "[t]he possibility that future economic benefits will flow from a non-commercial fax, ancillary to the content of the fax, is legally irrelevant to determining whether the fax is an ad." *Sandusky*, 788 F.3d at 225 (rejecting the argument that "[n]o matter what faxes look like on their face, a jury might conclude that, taken together, they have a positive effect on [defendant's] business."). Even if Defendants were to profit from verifying Plaintiff's contact information and selling it to third parties, there is no allegation or argument that Defendants are advertising – or will advertise – any goods or services to Plaintiff.

Second, even if the "Lexis Page" contains the advertising language the Plaintiff alleges, the "Lexis Page" is not a part of the Fax, nor is any of the information Plaintiff notes on the face of the Fax. The "Lexis Page" is a webpage that one can access upon entering the domain name ("www.enclarity.com/providerfaqs.php") set forth at the bottom of the Fax. The *Sandusky* court expressly rejected the plaintiff's argument that it "should look outside of the four corners of the faxes to see that they're ads." *Sandusky*, 788 F.3d at 224.[2] *See also Smith v. Blue Shield of CA,* No. 16-

---

[2]As the Court is bound by *Sandusky*, Plaintiff's citation to a case from the Southern District of Florida does not aid its position. *See Eden Day Spa, Inc. v. Morris D. Loskove d/b/a Loskove Insurance Agency*, No. 14-81340-civ, 2015 WL 1649967 at *3 (S.D. Fla. April 14, 2015) (analysis to determine if fax is part of an overall marketing campaign will require inquiry beyond four corners of the complaint). The *Eden Day Spa* court also found that the fax at issue could be an advertisement "[o]n the face of the complaint," which is not the situation here.

9

100108, 2017 U.S. Dist. LEXIS 5620, at *29 (C.D. Cal. Jan. 13, 2017) (the "mere fact that parts of Blue Shield's website contain the capabilility of allowing consumers to engage in commerce does not transform any message including [the web address of] its homepage into telemarketing or advertising").

Finally, numerous cases cited by Plaintiff do not support its position because, unlike this case, the cited cases recognize that some product, good, or service has been offered to the recipient. *See, e.g., Vinny's Landscaping, Inc.*, 2016 WL 4801276, at **1-3 (motion to dismiss denied as to fax titled "Introducing Our New Bankruptcy Program" as the "primary purpose [of the fax] could plausibly be construed as promoting the commercial availability of Defendants' new bankruptcy program"); *Herrick v. QLess, Inc.*, No. 15-cv-14092, 2016 WL 6902544, at *3 (E.D. Mich. Oct. 26, 2016) (motion to dismiss denied as to text message advertising free app); *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 493 (W.D. Mich. Jan. 12, 2015) (motion for summary judgment denied as to fax offering free steak dinner at a seminar because it constituted a "pretext to advertise"); *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F.Supp.2d 272, 282-83 (S.D. N.Y. 2013) (motion to dismiss denied as to fax offering free equipment and services); *North Suburban Chiro. v. Merck & Co.*, No. 13-C-3113, 2013 WL 5170754, at **3-4 (N.D. Ill. Sept. 13, 2013) (motion to dismiss denied as to fax inviting recipients to medical education

10

program); *G.M. Sign, Inc. v. MFG.com, Inc.*, No. 08 C 7106, 2009 WL 1137751, at \*\*2-3 (N.D. Ill. Apr. 24, 2009) (motion to dismiss denied as to fax promoting free services).

This case is unlike *Comprehensive Health Care Systems of the Palm Beaches*, a case Plaintiff cited as persuasive authority at the hearing. In that case, there are two significant "facts" cited by the court that distinguish that case from this one: (a) "The faxes at issue <u>direct</u> a potential participant to [defendant's] survey weblink," and (b) "Defendant <u>offers compensation</u> for participation in online surveys and advertises the <u>commercial</u> availability of Defendant's online paid survey program, through which Defendant gathers market research and opinions from health professionals for its clients." *Comprehensive Health Care Systems of the Palm Beaches,* 2017 WL 108029, at \*3 (emphasis added). Based on those "facts," which differ from this case, that court concluded that there was a question whether the defendant's survey fax was mere "pretext for advertising <u>its</u> [*i.e.*, the defendant's] goods or services." As noted above, nothing on the Fax (or even on Defendants' website) advertises for sale any good, products, or services of Defendants. In addition, as the Court is bound by *Sandusky*, Plaintiff's citation to this case from the Southern District of Florida does not aid its position, particularly as the Florida court relied on documentation outside of the four corners of the fax. *Id.*

11

The facts of the instant case also differ significantly from *Drug Reform Coordination Network, Inc. v. Grey House Publishing, Inc.*, 106 F.Supp.3d 9 (D.D.C. 2015), another case Plaintiff noted at the hearing. In *Grey House Publishing*, the court noted that "the Fax offered a free listing [for plaintiff's business]" and defendant would "follow up . . . with subsequent email, fax, telephone communications, and other methods that <u>solicit</u> the purchase of Defendant's directories." *Id.* at 11-15 (emphasis added). In this case, Defendants did not offer anything for free and, more importantly, did not seek to sell any products, goods, or services to Plaintiff at any time.

The Court finds that no amendment could cure the deficiencies in the Complaint. Any amendment would be futile because an amendment would not change the content of the Fax, and the content of the Fax is insufficient to constitute an advertisement, as a matter of law. As any amendment would be futile, the Court dismisses Count I of Plaintiff's Complaint, with prejudice.

The Court notes that it understands Plaintiff's position – and agrees that it appears – that: (1) Defendants send recipients the Fax for the purpose of gathering contact information; (2) Defendants provide that contact information to third-parties (presumably at a profit); and (3) the third-parties then utilize the information collected by Defendants to attempt to sell products, goods, and services to recipients of the Fax.

Based on *Sandusky* and the language of the TCPA, however, the Court must conclude that Defendant does not violate the TCPA when sending the Fax to recipients because Congress did not include language in the TCPA to prohibit such conduct.

**C.     Dismissal of State Law Conversion Claim**

It is undisputed that Plaintiff's conversion claim in Count II is rooted entirely in state law. Because no federal law claim remains before the Court, and because this case is in its preliminary stages, the Court concludes that the litigation of Plaintiff's state law claim would most appropriately be conducted in state court. For those reasons, the Court declines to retain jurisdiction over Count II of Plaintiff's Complaint. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon v. Cohill*, 484 U.S. 343 (1988). The Court dismisses Count II of Plaintiff's Complaint, without prejudice.

**IV.     CONCLUSION**

For the reasons stated above,

IT IS ORDERED that: (1) Defendants' Motion to Dismiss [Dkt. No. 18] is **GRANTED**; (2) Count I of Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**, (3) Count II of Plaintiff's Complaint is **DISMISSED WITHOUT**

**PREJUDICE**, and (4) Plaintiff's cause of action is **DISMISSED**. Judgment will be entered accordingly.

    IT IS SO ORDERED.

                S/Denise Page Hood
                Denise Page Hood
                Chief Judge, United States District Court

Dated:  March 1, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 1, 2017, by electronic and/or ordinary mail.

                S/LaShawn R. Saulsberry
                Case Manager