# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: June 19, 2020

Mr. Phillip Andrew Bock
Mr. David Max Oppenheim
Bock & Hatch
134 N. LaSalle Street, Suite 1000
Chicago, IL 60602

Mr. Tiffany Cheung
Morrison & Foerster
425 Market Street
San Francisco, CA 94105

Mr. Joseph R. Palmore
Mr. Adam Sorensen
Morrison & Foerster
2000 Pennsylvania Avenue, N.W., Suite 6000
Washington, DC 20006

Re: Case No. 17-1380, *Matthew N. Fulton, DDS, PC v. Enclarity, Inc., et al*
Originating Case No. : 2:16-cv-13777

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0186p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

MATTHEW N. FULTON, D.D.S., P.C., individually and as the representative of a class of similarly situated persons,

    *Plaintiff-Appellant*,

  *v.*

ENCLARITY, INC.; LEXISNEXIS RISK SOLUTIONS, INC.; LEXISNEXIS RISK SOLUTIONS GA, INC.; LEXISNEXIS RISK SOLUTIONS FL, INC.; JOHN DOES, 1–12,

    *Defendants-Appellees*.

No. 17-1380

_____

On Remand from the Supreme Court of the United States.
United States District Court for the Eastern District of Michigan at Detroit.
No. 2:16-cv-13777—Denise Page Hood, Chief District Judge.

Decided and Filed:  June 19, 2020

Before:  GIBBONS, WHITE, and STRANCH, Circuit Judges.

_____

**COUNSEL**

**ON SUPPLEMENTAL BRIEF:**  Phillip A. Bock, David M. Oppenheim, BOCK, HATCH, LEWIS & OPPENHEIM, LLC, Chicago, Illinois, for Appellant.  Tiffany Cheung, MORRISON & FOERSTER LLP, San Francisco, California, Joseph R. Palmore, Adam L. Sorensen, MORRISON & FOERSTER LLP, Washington, D.C., for Appellees.

  STRANCH, J., delivered the opinion of the court in which WHITE, J., joined. GIBBONS, J. (pg. 13), delivered a separate dissenting opinion.

---

## OPINION

---

JANE B. STRANCH, Circuit Judge.  Plaintiff Matthew N. Fulton, DDS, PC, a dental practice in Linden, Michigan, brings this suit on behalf of itself and others similarly situated. Fulton alleges that his dental practice received a fax from Defendants in September 2016 that was an unsolicited advertisement under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, but failed to include the requisite opt-out provision. Arguing that the fax did not qualify as an advertisement under the TCPA, Defendants moved to dismiss the complaint. The district court agreed and dismissed the complaint for failure to state a claim. This court reversed and remanded the case for additional proceedings. *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 907 F.3d 948 (6th Cir. 2018). We denied the Defendants' petition for rehearing by the panel and for rehearing en banc.

Defendants filed a petition for a writ of certiorari. *Enclarity Inc. v. Fulton*, 140 S. Ct. 104 (2019). The Supreme Court issued an order—known as a grant, vacate, and remand order (GVR)—directing us to reconsider the appeal in light of its recent opinion in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019). "[O]ur law is clear that a GVR order does not necessarily imply that the Supreme Court has in mind a different result in the case, nor does it suggest that our prior decision was erroneous." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 845 (6th Cir. 2013) (collecting cases). Rather, our task following the GVR is to "determine whether our original decision" to reverse the district court's order was correct or whether *PDR Network* "compels a different resolution." *Id.*

*PDR Network* does not impact the resolution of this case. Applying the standards governing dismissal of a complaint for failure to state a claim, we find that Fulton has plausibly alleged that the fax was an unsolicited advertisement insofar as it alleged that the fax served as a pretext to send Fulton additional marketing materials. We **REVERSE** and **REMAND** this case for additional proceedings consistent with this opinion.

No. 17-1380                    *Fulton v. Enclarity, Inc.*                    Page 3

# I. BACKGROUND

This lawsuit stems from a fax Fulton's dental practice received on September 7, 2016.[1] The fax provided in pertinent part:

> Re: Fax Number Verification for Delivery of Patient PHI (Internal ID: 34290748)
>
> The purpose of this Fax Verification Request is to help preserve the privacy and security of your patients' Protected Health Information ("PHI"), as defined by the Health Insurance Portability and Accountability Act ("HIPAA"). LexisNexis is seeking your cooperation to verify or update your information. We validate and update the fax in our system so our clients can use them for clinical summaries, prescription renewals, and other sensitive communications. Verifying the practice address, phone number[,] and your secure fax number(s) for this location will minimize the potential privacy risks that could arise from information sent to an unsecured location. As part of our effort to assure that the [sic] transmission of PHI, it is vital to verify the information for Dr. Matthew Norman Fulton, DDS is accurate. This information will be verified once each year.

The fax provided space for recipients either to validate the contact information listed in the fax's heading or to update their contact information along with a signature line and room for comments. The fax ended by providing a phone number and by incorporating a website of Frequently Asked Questions with the inclusion of the following Universal Resource Locator (URL): http://www.enclarity.com/providerfaqs.php. The fax did not contain an opt-out notice.

Fulton attached the LexisNexis Provider FAQs (FAQs) as an exhibit to the complaint. The FAQs indicate that the "system" referred to in the fax is the Master Provider Referential Database. Defendants explain that providers' contact information will be licensed to their "customer base," which is comprised of "health insurance plans, preferred provider organizations, pharmacy network companies, pharmacy benefit managers, property and casualty insurance carriers, retail pharmacies, government entities, as well as life sciences companies (pharmaceutical and medical device manufacturers)." According to the FAQs, Defendants "have compiled the largest, most accurate database of medical provider business and professional demographic data in the United States." The FAQs also indicate what will happen to providers' verified contact information:

---

[1]This action was filed by Fulton's eponymous dental practice, not by Fulton as an individual.

> Our customers use provider information in a variety of ways, including communicating patient prescription data, validating provider identity for claims payments, reimbursing providers for medical bills, updating provider directories, renewing prescriptions, researching health care practitioners to invite them to become part of a provider network, sending important notifications, such as product recalls, and other uses.

Validating one's contact information, the FAQs state, will "help to drive more business to you."

Other portions of the Defendants' website promote the advantages of using Defendants' "ProviderLookup" product, which is their "Web-based, real-time provider information search service" that uses the information in the Master Provider Referential Database. In other words, the contact information gathered by faxes like the one Fulton received is used to build the Master Provider Referential Database, which Defendants sell to their customer base through ProviderLookup.

Fulton filed a two-count class action complaint in October 2016. Count I asserted that the fax violated the TCPA and Count II asserted a state law conversion claim. Fulton named as Defendants Enclarity, Inc., Lexis Nexis Risk Solutions, Inc., LexisNexis Risk Solutions GA, Inc., LexisNexis Risk Solutions FL, Inc., and John Does, 1–12 (collectively referred to herein as Defendants). The complaint included the fax, as well as printouts from Defendants' referenced website, including the FAQs, a provider lookup form, Defendants' privacy policy, and Defendants' terms and conditions. Fulton alleged that the fax was a pretext to obtain both "participation in Defendants' proprietary database" and "consent . . . to send additional marketing faxes to recipients." Fulton alleged that both "Defendants and third parties will use the information to contact the recipients regarding products, services, competitions and promotions."

Fulton also contended that the fax was "a pretext to increase awareness and use of Defendants' proprietary database service and increase traffic to Defendants' website." According to Fulton, "Defendants consolidate healthcare provider contact information into their proprietary Master Provider Referential Database, a commercially available product or service that Defendants sell or lease to their subscribers and licensees." The complaint set forth class

allegations, including that Defendants sent the same fax that Fulton received to at least thirty-nine other similarly situated individuals.

Defendants responded to the complaint by filing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). They argued that the fax did not meet the TCPA's definition of an advertisement and therefore was not required to have an opt-out provision. The district court agreed. It found that "[n]othing mentioned in the fax is available to be bought or sold," and concluded that the fax "lack[ed] the commercial components inherent in ads." *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, No. 16-13777, 2017 WL 783499, at *3 (E.D. Mich. Mar. 1, 2017) (citations and internal quotation marks omitted). The court also found that even if Defendants might "profit from verifying Plaintiff's contact information to third parties, there is no allegation or argument that Defendants are advertising—or will advertise—any goods or services to Plaintiff." *Id.* The district court disregarded the attachments to the complaint, on the basis that this court's decision in *Sandusky Wellness Center., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 221 (6th Cir. 2015) constrained its analysis to the four corners of the fax. *Fulton*, 2017 WL 783499, at *3. After dismissing Fulton's TCPA claim with prejudice, the district court determined that the state law conversion claim belonged in state court and dismissed it without prejudice. *Id.* at *5.

## II. DISCUSSION

We review de novo the grant of a motion to dismiss under Rule 12(b)(6). *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Courts must "construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true." *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The threshold issue in this appeal is whether the Supreme Court's decision in *PDR Network* changes the reasoning or outcome of this court's 2018 *Fulton* opinion, which concluded that Fulton's complaint stated a claim for TCPA relief.

We begin with the Supreme Court's explanation of *PDR Network's* procedural history. The district court dismissed the TCPA claim, concluding that the relevant fax—informing health care providers that they could reserve a free copy of a new reference e-book—was not an "unsolicited advertisement." 139 S. Ct. at 2054. In dismissing the complaint, the district court acknowledged that the 2006 FCC order, 21 FCC Rcd. 3787, 3814 (2006), might be read to support a contrary conclusion. *Id.* The 2006 Order defines unsolicited advertisements and explains pretextual faxes:

> The Commission concludes that facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services." Therefore, facsimile communications regarding such free goods and services, if not purely "transactional," would require the sender to obtain the recipient's permission beforehand, in the absence of an [established business relationship].

71 Fed. Reg. at 25973. The district court recognized that the Hobbs Act, 28 U.S.C. § 2342(1), gives appellate courts, not district courts, "exclusive jurisdiction" to "determine the validity of" certain FCC "final orders." *PDR Network,* 139 S. Ct. at 2054–55; 28 U.S.C. § 2342(1). "Nonetheless, the District Court concluded that neither party had challenged the Order's validity," and "it held that even if the Order is presumed valid, a district court is not bound to follow the FCC interpretation announced in the Order." *Id.* at 2054.

Based on the Hobbs Act, the Fourth Circuit reversed, holding that "'the jurisdictional command' of the Hobbs Act—that is, the word 'exclusive'—'requires a district court to apply FCC interpretations'" of the TCPA. *Id.* at 2054 (explaining and quoting the Fourth Circuit

Case 2:16-cv-13757-DPH-RSW ECF No. 382-1 filed 06/19/20 PageID.276 Page 9 of 16
Case: 17-1380 Document: 38-2 Filed: 06/19/2019 Page: 7 (9 of 16)

No. 17-1380                    *Fulton v. Enclarity, Inc.*                                   Page 7

holding). And the Circuit concluded that the district court "should have adopted the interpretation of 'unsolicited advertisement' set forth in the 2006 Order." *Id.* at 2054–55.

The Supreme Court granted certiorari to consider whether the Hobbs Act, which vests "exclusive jurisdiction" in the courts of appeals to "enjoin, set aside, suspend" or "determine the validity of" FCC "final orders," rendered the 2006 FCC order binding authority in private TCPA actions. 139 S. Ct. at 2053. The Court, however, did not resolve this question. *See id.* Instead, it remanded the case to the Fourth Circuit to consider two preliminary issues: 1) whether the 2006 Order is a "legislative rule" with "the 'force and effect of law'" or simply an "interpretive rule" that "'advises the public of the agency's construction of the statutes and rules which it administers,'" 139 S. Ct. 2055 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302–03 (1979) and *Perez v. Mortgage Bankers Assn.*, 575 U.S. 92, 97 (2015)); and 2) whether the defendant had a "'prior' and 'adequate' opportunity to seek judicial review of the order,'" *id.* (quoting 5 U.S.C. § 703). The Court explained that "[i]f the relevant portion of the 2006 Order is the equivalent of an 'interpretive rule,' it may not be binding on a district court, and a district court therefore may not be required to adhere to it." *Id.* The Court also explained that even if the 2006 Order "is deemed a 'legislative' rule rather than an 'interpretive' rule," there may be avenues through which a defendant may "challenge the validity of the Order." *Id.* at 2056.

Although we did mention the 2006 Order, our prior opinion did not cite or construe the Hobbs Act, defer to the 2006 Order to dispose of the appeal, nor require that the district court strictly adhere to the 2006 Order regardless of the TCPA's text. *See Fulton*, 907 F.3d at 953–55. The same is true of the district court's order that we review. *Fulton*, 2017 WL 783499, at *2. Instead, we relied primarily on our precedent and the text of the TCPA to decide whether, construing the complaint in the light most favorable to Fulton and accepting all factual allegations as true, the complaint contained enough factual matter to state a claim for relief under the TCPA. Here, the parties agree that the 2006 Order serves only as persuasive authority in this litigation. Thus, we can answer the questions presented in this appeal based on the TCPA, this circuit's precedent, and other persuasive law.

A.  The *Sandusky* Decision

To do so, we begin by clarifying this court's decision in *Sandusky*, 788 F.3d 218.  The district court's opinion is founded on its interpretation of *Sandusky*, which it understood as compelling its holding that Fulton's TCPA claim fails unless the commercial nature of the fax is evident from the face of the fax.  The district court also adopted the Defendants' argument that *Sandusky* requires a fax to "propose a commercial exchange between the sender and the recipient" to trigger TCPA coverage. These holdings reflect an improper understanding of *Sandusky* and impose undue restrictions on TCPA claims.

*Sandusky*, a summary judgment decision, addressed two faxes sent to a chiropractor by Medco Health Solutions, a benefit manager that acted "as an intermediary between health plan sponsors (often employers) and prescription drug companies."  788 F.3d at 220.  The faxes contained notifications of certain drugs included in Medco's "formulary," the list of drugs available to some of the chiropractor's patients through healthcare plans offered by one of Medco's sponsor-clients.  *Id.*  The chiropractor brought suit under the TCPA alleging that the faxes were unsolicited advertisements.  Applying summary judgment standards, we concluded that "[t]he undisputed facts in the record . . . show that each [fax] merely informed [the plaintiff] which drugs its patients might prefer, irrespective of Medco's financial considerations."  *Id.* at 221.  After examining the record, *Sandusky* found that the faxes were "not sent with hopes to make a profit, directly or indirectly, from [the plaintiff] or others similarly situated" and no "record evidence show[ed] that Medco hope[d] to attract clients or customers by sending the faxes."  *Id.* at 222.  Instead, we determined that those faxes had a "purely informational" and "non-pecuniary" purpose and were sent as part of "a paid service already rendered not to [the plaintiff] but to Medco's clients."  *Id.*  Summarizing the applicable TCPA test, *Sandusky* held that to qualify as an unsolicited advertisement under the TCPA, a fax "must promote goods or services that are for sale, and the sender must have profit as an aim."  *Id.* at 223–24.  Because the faxes Medco sent did not meet this definition, the TCPA was not implicated.

The plaintiff in *Sandusky* also asked that the faxes be interpreted in the context of Medco's previous business, a mail-order pharmacy, and Medco's history of noncompliance with state laws when operating that pharmacy.  *Id.* at 225.  We declined to factor in this "extraneous

and speculative down-the-stream evidence" for the purpose of determining whether "Medco might financially benefit from these faxes several locks down the stream of commerce." *Id. Sandusky* stands for the proposition that in this situation, an "ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation." *Id.* at 225. But nowhere does *Sandusky* confine a court's consideration of TCPA claims to the face of the challenged fax. To the contrary, *Sandusky* repeatedly surveyed "the record evidence" for proof of a financial benefit to Medco and, in so doing, went beyond the faces of the two faxes. *Id.*; *see also id.* at 222 (reviewing the record evidence). *Sandusky* also acknowledged that a fax could be an advertisement without overtly offering a product or service for sale, such as offers for free seminars that turn out to be pretext for a later solicitation. *Id.* at 225 (citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25,967, 25,973 (May 3, 2006)). Finding a fax to be pretext for a subsequent advertising opportunity would require looking to what came after the fax. A court could not possibly resolve a claim that a fax was pretextual if it confined its evaluation to the fax itself.

*Sandusky* thus does not entail the two requirements imposed by the district court: that the fax must propose a direct commercial transaction between the sender and the recipient and that courts are constrained to examining only the face of the fax. In contravention of such requirements, *Sandusky* recognizes that the fax "need not be an explicit sale offer," that the "best ads" are sometimes not "so overt," and then concludes that TCPA coverage is accorded where the fax is "an indirect commercial solicitation, or pretext for" such a solicitation." *Id.* at 225. This understanding of the TCPA is buttressed by the text of the statute itself, which likewise lacks the requirements imposed by the district court. *See* 47 U.S.C. § 227.

This clarification of *Sandusky* governs our analysis. The district court misconstrued *Sandusky* when it disregarded the exhibits attached to Fulton's complaint. The exhibits are part of the record, and we may consider them when evaluating Fulton's TCPA claim. And we may do so without converting Defendants' motion to dismiss into one for summary judgment. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) (explaining that courts may consider documents "referred to in the pleadings" and "integral to

the claims . . . without converting a motion to dismiss into one for summary judgment"). Under this circuit's precedent, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Id.* at 335 (citing Fed. R. Civ. P. 10(c)). Indeed, Defendants do not challenge the authenticity of Fulton's exhibits, having conceded that their contents may be accepted as facts. Our review of Defendants' motion to dismiss properly includes the exhibits Fulton attached to the complaint.

### B. Unsolicited Faxes Under the TCPA

The TCPA prohibits sending a fax that is an "unsolicited advertisement" unless, among other requirements, the fax has a satisfactory opt-out notice. *See* 47 U.S.C. § 227(b)(1)(C).[2] The TCPA creates a private right of action for recipients of unsolicited advertisements, which provides for statutory damages of $500 per violation and for injunctive relief to prevent future violations. *Id.* § 227(b)(3). The parties do not dispute that the fax Defendants sent to Fulton was unsolicited and lacked an opt-out provision. The issue is whether the fax qualified as an advertisement within the meaning of the TCPA.

Whether a fax constitutes an unsolicited advertisement is a question of law. *See Sandusky*, 788 F.3d at 221. The TCPA defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). As we acknowledged in *Sandusky*, the TCPA covers faxes that serve as "pretext for a commercial solicitation." 788 F.3d at 225. In addition, and as previously described, the FCC has explained that offers for free goods or services fall within the TCPA because they are "often part of an overall marketing campaign to sell property, goods, or services." 71 Fed. Reg. at 25973.

---

[2]In 1991, Congress passed and President George H.W. Bush signed the Telephone Consumer Protection Act. *See* Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified as amended at 47 U.S.C. § 227). In 2005, Congress passed and President George W. Bush signed the Junk Fax Prevention Act, which amended the 1991 Act. *See* Pub. L. No. 109-21, 119 Stat. 359 (2005) (codified at 47 U.S.C. § 227). For simplicity, we refer to the combined amended legislation as the TCPA.

According to Fulton's complaint, providing verified contact information paves the way for Defendants' customers to "send additional marketing faxes to recipients." This allegation finds some support in the FAQs, which confirm that Defendants' customers use the system to, "invite [providers] to become part of a provider network" and "send[] important notifications," among "other uses." The potential for future advertising is also implied by Defendants' assertion that verifying contact information will "drive more business to" providers. Defendants have not contested this allegation.

The Second Circuit recently considered whether a TCPA plaintiff who claimed that a fax was pretextual had satisfied the Rule 12(b)(6) pleading standard. *See Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92 (2d Cir. 2017). In *Boehringer*, a medical office received a fax inviting a doctor to a free dinner meeting to discuss certain health conditions, which was sponsored by the defendant, a pharmaceutical company. *Id.* at 93. The defendant had created a drug to treat those health conditions but could not legally market its treatment until it had received approval from the Food and Drug Administration (FDA). *Id.* at 94. The district court reviewed the FCC's rule, acknowledged that it tracks the language of the statute, then dismissed the complaint on the basis that plaintiffs were required "to show that the fax has a commercial pretext—i.e., 'that the defendant advertised, or planned to advertise, its products or services at the seminar.'" *Id.* at 95 (quoting *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, No. 3:14-CV-405, 2015 WL 144728, at * 3 (D. Conn. Jan. 12, 2015)). The Second Circuit reversed, emphasizing that at the motion to dismiss phase, a plaintiff need only plausibly allege a commercial pretext, not actually show it, and noting that a requirement of more specificity would "impede the purposes of the TCPA." *Id.* at 95–96. Even though the free dinner meeting would not feature discussion of the defendant's drug, the Second Circuit found sufficient the allegation that the defendant sent a fax on a subject that "relate[d] to [its] products or services," which led to "a plausible conclusion that the fax had the commercial purpose of promoting those products or services." *Id.* at 95.

The decision in *Boehringer* centered on the alleged "commercial nexus" between the free dinner offered in the fax and the defendant's "business, i.e., its property, products, or services." *Id.* at 96. According to Fulton, that same nexus exists here: The fax solicits information to

verify its system of provider information, which Defendants make commercially available to other health care organizations, who may subject Fulton to future unsolicited advertising.

Taking the complaint's allegations as true and drawing all inferences in Fulton's favor, as we must at the motion to dismiss stage, we find that Fulton has adequately alleged that the fax Fulton received was an unsolicited advertisement because it served as a commercial pretext for future advertising opportunities. Fulton has therefore stated a plausible TCPA claim under the fax-as-pretext theory. Because this conclusion is sufficient to warrant reversing and remanding the case, we need not reach Fulton's alternative theory that the fax was an advertisement because Defendants sent it with a profit motive.

### C. Fulton's State Law Claim

After dismissing Fulton's TCPA claim, the district court dismissed Fulton's state law conversion claim. The district court concluded that "[b]ecause no federal law claim remains before the Court, and because this case is in its preliminary stages, the court concludes that the litigation of Plaintiff's state law claim would most appropriately be conducted in state court." *Fulton*, 2017 WL 783499, at *5. Because Fulton did state a TCPA claim over which the district court had original jurisdiction, Fulton's conversion claim also remains before the district court.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment in favor of Defendants and **REMAND** Fulton's TCPA and conversion claims for further proceedings consistent with this opinion.

No. 17-1380                  *Fulton v. Enclarity, Inc.*                  Page 13

---

## DISSENT

---

JULIA SMITH GIBBONS, Circuit Judge, dissenting. I agree with the majority's conclusion that *PDR Network* has no bearing on this case. I also agree with the majority's analysis of *Sandusky*'s import and its assessment of the district court's errors. But I disagree with the majority's conclusion that the fax at issue was an unsolicited advertisement under the TCPA.

The majority holds that Fulton has plausibly alleged that the fax was an unsolicited advertisement, because "it alleged that the fax served as a pretext to send Fulton additional marketing materials." Majority Op. at 2. However, I respectfully disagree on this point. In its complaint, Fulton alleges that if it updated its contact information as requested by the fax, it would then have agreed to Enclarity's privacy policy, which in turn would have allowed Enclarity to send promotional material for other products and services. But, as Enclarity refutes, this argument is highly speculative. There are no alleged facts suggesting that Enclarity would have used, or even intended to use, this fax as a stepping stone to future solicitations of Fulton. Moreover, as Enclarity points out, Fulton is able to manage any of its communications preferences and opt out of receiving any future faxes from Enclarity. A conclusory allegation stating that Enclarity sent this request for information as a pretext to advertise is not sufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (stating that "a complaint must contain sufficient factual matter," and that it will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007))).

Thus, I believe the fax was not an advertisement under the TCPA because its primary purpose was to improve the service and not to solicit business or sales from, or through, Fulton. Accordingly, we should affirm the district court's decision based on alternative reasoning.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 17-1380

MATTHEW N. FULTON, D.D.S., P.C.,
individually and as the representative of a
class of similarly situated persons,

    Plaintiff - Appellant,

v.

ENCLARITY, INC.; LEXISNEXIS
RISK SOLUTIONS, INC.; LEXISNEXIS
RISK SOLUTIONS GA, INC.; LEXISNEXIS
RISK SOLUTIONS FL, INC.; JOHN DOES 1–12,

    Defendants - Appellees.

**FILED**
Jun 19, 2020
DEBORAH S. HUNT, Clerk

Before: GIBBONS, WHITE, and STRANCH, Circuit Judges.

# JUDGMENT

On Remand from the Supreme Court of the United States.

UPON CONSIDERATION of the Supreme Court's order of October 7, 2019 to reconsider the appeal in light of *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, and the supplemental briefs of counsel,

IT IS AGAIN ORDERED that the district court's judgment in favor of Defendants is REVERSED, and Plaintiff's Telephone Consumer Protection Act and conversion claims are REMANDED for further proceedings consistent with the opinion of this court.

                                      **ENTERED BY ORDER OF THE COURT**

                                      Deborah S. Hunt, Clerk