**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MATTHEW N. FULTON, DDS, P.C., individually and on behalf of all others similarly situated,

Plaintiff,

v.

ENCLARITY, INC., LEXISNEXIS RISK SOLUTIONS INC., LEXISNEXIS RISK SOLUTIONS GA INC., LEXISNEXIS RISK SOLUTIONS FL INC., and JOHN DOES 1-12,

Defendants.

No. 16-CV-13777

Judge Denise Page Hood

Magistrate Judge R. Steven Whalen

**CLASS ACTION**

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

NOW COMES plaintiff, Matthew N. Fulton, DDS, P.C. ("Plaintiff"), pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (g), and requests that the Court issue an Order, granting the motion, certifying a class, and appointing Plaintiff as its representative and Plaintiff's attorneys, Bock Hatch & Oppenheim, LLC, as class counsel, all for the reasons set forth below and in the attached brief in support.

For Plaintiff, attorney Jonathan Piper personally spoke to, or met with, opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief, and opposing counsel expressly denied concurrence.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a class of persons and proposes the following class definition:

> All persons: (1) to whom Defendants sent one or more faxes during the period between October 30, 2012, and December 6, 2016, requesting that the recipient review, update, and correct the contact information on the fax for an identified medical provider and return it by fax; and (2) for whom Defendants have produced no record of any contact other than a complaint or request to stop sending such faxes.[1]

"Class certification is normal in litigation under [the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227] because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Holtzman v. Turza*, 728 F.3d 681, 684 (7th Cir. 2013). The Sixth Circuit has likewise held that class certification is appropriate in mass fax cases under the TCPA. *Bridging Communities Inc. v. Top Flite Financial Inc.*, 843 F.3d 1119 (6th Cir. 2016) (reversing denial of class certification); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014) (affirming class certification and summary judgment in favor of certified class).

---

[1] The targeted medical professionals and their contact information, and the records of Defendants' transmissions of what Defendants call "Verified Secure Faxes" ("VSF") to them are listed in Exhibit B.1. to the "(Supplemental Rebuttal) Expert Report of Lee Howard" ("Howard Supp. Report"). *See* Declaration of Lee Howard, attached hereto as Exhibit A, ¶ 47, Ex. A-2(B), submitted under seal as an xlsx spreadsheet with file name "21-12-21 - Fulton v Enclarity – Rebuttal - Ex. B.xlxs." Exhibits attached in support of this motion are referred to as Exhibit __ when the attached Exhibit is first cited. Citations to exhibits within depositions and reports are referenced as "Ex." and not underlined.

Plaintiff has submitted a brief with exhibits in further support of this motion.

**WHEREFORE**, Plaintiff requests that the Court certify the class, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as class counsel, because the requirements of Rule 23(a), (b)(3), and (g) are satisfied.

Dated: January 18, 2022

Respectfully submitted,

By: /s/ *Phillip A. Bock*
One of Plaintiff's Attorneys

Phillip A. Bock
Robert M. Hatch (P46566)
Jonathan B. Piper
Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
(312) 658-5500
(312) 658-5555 (fax)
service@classlawyers.com

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION**

MATTHEW N. FULTON, DDS, P.C., individually and on behalf of all others similarly situated,

Plaintiff,

v.

ENCLARITY, INC., LEXISNEXIS RISK SOLUTIONS INC., LEXISNEXIS RISK SOLUTIONS GA INC., LEXISNEXIS RISK SOLUTIONS FL INC., and JOHN DOES 1-12,

Defendants.

No. 16-CV-13777

Judge Denise Page Hood

Magistrate Judge R. Steven Whalen

**CLASS ACTION**

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION**

Phillip A. Bock
Robert M. Hatch (P46566)
Jonathan B. Piper
Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
(312) 658-5500
(312) 658-5555 (fax)
service@classlawyers.com

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... iii

STATEMENT OF THE ISSUE ..... v

CONTROLLING AUTHORITY ..... v

MEMORANDUM OF LAW ..... 1

I. Introduction. ..... 1

II. Statement of facts. ..... 5

A. The parties. ..... 5

1. Plaintiff. ..... 5

2. Defendants. ..... 5

B. Enclarity's founding and business model. ..... 5

C. Defendants' "Verified Secure Fax" ("VSF") program. ..... 6

1. How Defendants' VSF program worked. ..... 6

2. [redacted] ..... 8

3. Defendants used the data generated by their VSF program to update their MPRD for use with all their products. ..... 9

4. Defendants represented that the data generated by responses to VSF faxes would be used by Defendants' clients for marketing to those same providers. ..... 10

5. Defendants sought to encourage responses to the VSF faxes by touting the value of their service to the providers. ..... 12

6. Defendants sent [redacted] VSF faxes to Plaintiff, but Plaintiff did not respond in any way to any of them. ..... 12

III. Procedural history ..... 13

IV. Argument. ..... 14

A. Legal standards for class certification. ....................................14

B. Plaintiff's proposed class satisfies all of Rule 23's requirements. ....................................16

1. Numerosity. ....................................16

2. Commonality. ....................................16

3. Typicality. ....................................17

4. Adequacy of representation – Plaintiff and its attorneys. ....................................18

5. Predominance. ....................................20

6. Superiority. ....................................24

V. Conclusion ....................................25

CERTIFICATE OF SERVICE ....................................26

# TABLE OF AUTHORITIES

Page

**Cases**

*Afro American Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir. 1974) .....16

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) .....24

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014) .....v, 4

*APB Assocs., Inc. v. Bronco's Saloon, Inc.*, 315 F.R.D. 200 (E.D. Mich. 2016) .....19

*Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434 (E.D. Mich. 2015) .....24

*Ball v. Union Carbide Corp.*, 385 F.3d 713 (6th Cir. 2004) .....20

*Bittinger v. Tecumseh Products Co.,* 123 F.3d 877 (6th Cir. 1997) .....16

*Bridging Communities Inc. v. Top Flite Financial Inc.*, 843 F.3d 1119 (6th Cir. 2016) .....v, 4

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299 (D.N.J. 2013) .....23

*Compressor Engineering Corporation v. Charles J. Thomas, Jr.*, 319 F.R.D. 511 (E.D. Mich. Dec. 29, 2016) .....24

*Cross v. Nat'l Trust Life Ins. Co.*, 553 F.3d 1026 (6th Cir. 1977) .....19

*Holtzman v. Turza*, 728 F.3d 681 (7th Cir. 2013) .....4

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ..... 16, 18, 20

*In re Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling et al.*, 34 FCC Rcd 11950 (F.C.C. Dec. 9, 2019) .....23

*Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 WL 3206324 (M.D.N.C. July 27, 2017) .....23

*Lyngaas, D.D.S. v. Ag*, 992 F.3d 412 (6th Cir. 2021) ..... 4, 15, 23

*Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985) .....15

*Powers v. Hamilton County Public Defender*, 501 F.3d 592 (6th Cir. 2007) ..... 15, 20

*Satterfield v. Simon & Schuster*, 569 F.3d 946 (9th Cir. 2009)....21
*Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976)....18
*Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir. 1997).... 16, 18

**Statutes**

47 U.S.C. § 227 (a) (4)....1
47 U.S.C. § 227 (b) (1) (C)....1
Telephone Consumer Protection Act, 47 U.S.C. 227....1

**Rules**

Fed. R. Civ. P. 23....v
Fed. R. Civ. P. 23(a)....14
Fed. R. Civ. P. 23(a)(1)....16
Fed. R. Civ. P. 23(a)(2).... 16, 17, 20
Fed. R. Civ. P. 23(a)(3).... 17, 18
Fed. R. Civ. P. 23(a)(4).... 18, 20
Fed. R. Civ. P. 23(b)....15
Fed. R. Civ. P. 23(g)....20

**Treatises**

1 Herbert B. Newberg and Alba Conte, NEWBERG ON CLASS ACTIONS, section 3:10 at 3-50 (3d ed. 1992)....16
1 Herbert B. Newberg and Alba Conte, Newberg on Class Actions, section 3:13 at 3-76 (3d ed. 1992)....18

## STATEMENT OF THE ISSUE

Are the requirements of Fed. R. Civ. P. 23(a), (b) (3), and (g) satisfied, warranting certification of the class?

Plaintiff's answer: Yes

## CONTROLLING AUTHORITY

- Federal Rules of Civil Procedure 23(a), (b)(3), and (g);
- *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014)
- *Bridging Communities Inc. v. Top Flite Financial Inc.*, 843 F.3d 1119 (6th Cir. 2016)

## MEMORANDUM OF LAW

Plaintiff, Matthew N. Fulton, DDS, P.C. ("Plaintiff"), by counsel, submits this memorandum of law in support of its motion for class certification.

### I. Introduction.

The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (the "TCPA") forbids the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." *Id*. at (b)(1)(C). An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).

Communication by fax remains dominant in the healthcare arena because the security regulations under the Health Insurance Portability and Accountability Act ("HIPAA") do not permit communication of personal health information ("PHI") on the open networks utilized by more modern forms of electronic communication. 45 C.F.R. § 164.312(a), (c)(1), (e)(1). As a result, healthcare providers such as Plaintiff's dental practice continue to be especially vulnerable to receiving unsolicited facsimile advertisements prohibited by the TCPA.

Defendants (Enclarity, Inc., LexisNexis Risk Solutions Inc., LexisNexis Risk Solutions Ga. Inc., and LexisNexis Risk Solutions Fl Inc.) (collectively

"Defendants") are in the business of collecting and verifying the contact data of healthcare providers. Suk Dep. (Exhibit B), Ex.1. Defendants market access to the data to health insurer clients by touting their ability to "enhance[] sales and marketing optimization" and "expand market share." Teeter Dep. (Exhibit C), p. 66:7-19, 68:3-69:4, 73:25-75:9, Exs. 8, 9, 12. Defendants encourage providers to verify and disclose their contact data by claiming that doing so will "drive more business to you." Teeter Dep., p. 58:21-59:13, Ex. 5. Put simply, Defendants offer a service to healthcare providers roughly analogous to a listing in the Yellow Pages, and they sell those listings to their "clients" in the healthcare industry.

Defendants sent [REDACTED] they refer to as "Verified Secure Faxes" ("VSFs") to Plaintiff's fax number in 2012, 2015, and 2016. Bergman Dep. (Exhibit D), pp. 39:12-42:4, 96:18-25, Exs. 1, 15; Christ Dep. (Exhibit E), pp. 18:18-19:11, Ex. 1; Dkt. No. 1-2. The VSF faxes solicited the recipient to verify and update Dr. Fulton's contact information by marking up the fax and faxing it back. Christ Dep., pp. 18:18-19:11, Ex. 1.

Defendants similarly sent VSFs targeting [REDACTED] of other healthcare providers as part of a systematic campaign to confirm and update the information in Defendants' commercially available database. Bergman Dep., pp. 10:7-12:23, 58:14-22, 61:1-5, Exs. 1, 3-11; Teeter Dep., pp. 58:25-59:13, Ex. 5; Howard Report (Exhibit A-1), ¶¶ 27-28, 30-38. [REDACTED]



[redacted]

[redacted]

[redacted] Defendants successfully sent [redacted] VSF faxes to [redacted] distinct fax numbers between October 30, 2012, and December 6, 2016. Howard Report, ¶ 28. Removing all fax numbers for which Defendants have any record of any contact, other than their transmission of the VSF faxes themselves, leaves [redacted] distinct fax numbers to whom Defendants successfully sent [redacted] VSF faxes. Howard Report, ¶¶ 33-34; Howard Supp. Report, ¶ 47.

Plaintiff seeks certification of a class alleging claims about those faxes, and proposes the following class definition:

> All persons: (1) to whom Defendants sent one or more faxes during the period between October 30, 2012, and December 6, 2016, requesting that the recipient review, update, and correct the contact information on the fax for an identified medical provider and return it by fax; and (2) for whom Defendants have produced no record of any contact other than a complaint or request to stop sending such faxes.[2]

In "junk fax" cases like this one, "[c]lass certification is normal in litigation under § 227 [of the TCPA] because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Holtzman v. Turza*, 728 F.3d 681, 684 (7th Cir. 2013). Sixth Circuit caselaw supports certification of a class here: (1) *Bridging Communities Inc. v. Top Flite Financial Inc.*, 843 F.3d 1119 (6th Cir. 2016) (reversing denial of class certification for TCPA fax broadcasting claims); and (2) *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014) (affirming class certification and entry of summary judgment in favor of certified class for TCPA fax broadcasting claims); *see also Lyngaas, D.D.S. v. Ag*, 992 F.3d 412 (6th Cir. 2021) (affirming certification of TCPA fax broadcasting class and using claims administration process to identify class members).

Plaintiff respectfully requests that the Court certify a class for litigation purposes, appoint Plaintiff as the class representative, and appoint Plaintiff's

---

[2]   The targeted medical professionals and their contact information, and the records of Defendants' transmissions of VSFs to them are listed in Howard Supp. Report, Declaration of Lee Howard Ex. A-2(B), submitted under seal as an xlsx spreadsheet with file name "21-12-21 - Fulton v Enclarity – Rebuttal - Ex. B.xlxs."

attorneys as class counsel, so the merits of the TCPA claims about Defendants' VSF faxes can be efficiently resolved on behalf of the class members in one proceeding.

## II. Statement of facts.

### A. The parties.

#### 1. Plaintiff.

Plaintiff is a dental practice in Linden, Michigan. Fulton Dep., p. 8:8-25.

#### 2. Defendants.

Defendants are a "healthcare provider data and information solutions company." Suk Dep., Ex. 1. Defendants are in the business of collecting and verifying contact data for healthcare providers. *Id.* Defendant LexisNexis Risk Solutions, Inc., acquired defendant Enclarity, Inc. on September 11, 2013. Suk Dep., pp. 12:24-13:12, Ex. 1. Enclarity continues to operate out of the same office as it did before the acquisition but now under the LexisNexis brand. Suk Dep., p. 7:11-8:7.

### B. Enclarity's founding and business model.

[redacted] Defendants

view the provider data offered and sold by Defendants' competitors as "very inaccurate and poor." Suk Dep., 127:18-20. In contrast, Defendants distinguish their MPRD data by marketing it as "accurate, complete, current and comprehensive." Suk Dep., 116:8-14. These "three Cs" are prevalent in Defendants' marketing material. *Id.*

One of Defendants' products is "Provider Point." Suk Dep., p. 41:9-17. Provider Point allows a client to submit its provider data to Defendants, so Defendant can confirm, correct, de-duplicate, and update that data by comparing it to the MPRD. Suk Dep., p. 41:12-17; Teeter Dep., pp. 33:7-22. Another product is "ProviderLookup." Suk Dep., p. 45:1-3. "ProviderLookup is a service that allows queries, allows an individual to query information about a provider. Google if you will for providers." Suk Dep., p. 45:1-3. Another product is "Provider SelectFile." Suk Dep., pp. 47:24. [redacted]

**C. Defendants' "Verified Secure Fax" ("VSF") program.**

**1. How Defendants' VSF program worked.**

[redacted]

[redacted]

The VSF faxes stated that Defendants are "seeking your cooperation to verify or update your information. We validate and update the fax in our system so our clients can use them for clinical summaries, prescription renewals, and other sensitive communications … This information will be verified once each year." Christ Dep., pp. 18:12-19:1, Ex. 1; Fulton Dep. (Exhibit F), pp. 217:24-218:19, Ex. 10; Dkt. No. 1-2; *see also* Suk Dep., pp. 69:11-70:7, 77:9-78:4, 86:15-87:6, Exs 2A, 2B, 3; Howard Report, ¶ 10.b., (ENC_0000500, 501, 1473, 1474, 1476, 1477, 1478, 1479, 1481, 1482, 1483, 1489).

The VSF faxes provided one box to check if the information on the VSF fax was correct and another box to check if it needed to be updated. *Id.* The "no" box also stated, "DECEASED (please circle)" in the event the named provider was deceased. *Id.* The VSF fax form provided a space for the recipient to update the provider's contact information. *Id.*

Below these sections the VSF faxes stated, "SIGN & FAX BACK TO (866) 699-0422." *Id.* Thus, the VSF faxes were sent on the assumption that they would be printed and with the aim that the recipients would mark them up and send them back as instructed. *Id.*

Defendants considered the VSF fax program to have value in confirming a fax number even if no one responded to the VSF fax. Suk Dep., p. 168:24-169:3. As Enclarity's founder Mr. Suk explained, "The importance for the fax is if you actually can successfully fax the number, you confirm that it's an additional confirmation that the fax is live." *Id.*

**2.**



Defendants never used Sfax to send any faxes that were not VSF faxes. Bergman, Dep., p. 112:8-16.

[redacted] Defendant relied on these records to confirm the targeted fax numbers were "live," even when there was no response to the VSF fax. Suk Dep., p. 168:24-169:3. [redacted]

**3. Defendants used the data generated by their VSF program to update their MPRD for use with all their products.**

[redacted] For example, Defendants' website stated:

> Enclarity delivers the highest quality information … by tapping the best data sources … and systematically verifying the results. The result is a storehouse of correct, current, comprehensive information that Enclarity calls its Master Provider Referential Database or MPRD. Enclarity's MPRD is the most trusted source in the industry – more leading payers have selected Enclarity to solve their provider information problem than any other company. All of Enclarity's information solutions tap the information in the MPRD, so you can be confident that you are receiving information you can rely on.

Schoeller Dep. (Exhibit H), p. 42:10-21, Ex. 19 (emphasis added).

Thus, clients that purchased Provider Point to update their provider contact lists, or Provider Lookup for data about particular providers, or Provider SelectFile

to find all providers by location or specialty, would have the benefit of accessing data from the MPRD that, because of the VSF program, was more "accurate, complete, current and comprehensive" than similar data sold by Defendants' competitors. Suk Dep., 116:8-14.

**4. Defendants represented that the data generated by responses to VSF faxes would be used by Defendants' clients for marketing to those same providers.**

Defendants maintained a website describing the value of their MPRD data products to potential clients including providers. Teeter Dep., pp. 17:19-21, 23:7-17, 25:4-26:3, Exs. 8, 9. For example, under sections entitled "Problems We Solve", "New Sales Opportunities," Defendants' website stated:

> If you can't identify the right providers, in the right locations, and in the right specialties and critical affiliations, you limit the <u>effectiveness of your sales team</u>. Count on Enclarity for the most complete and accurate set of health care provider data and affiliations in the business.

Teeter Dep., p. 74, Ex. 12 (emphasis added).

Defendants' website also stated, "The industries may vary. The problems may be different. But the results are the same … Enhance sales and marketing optimization." Teeter Dep., p. 66:7-19, Ex. 8. It also stated, "Better health care provider information fuels new business opportunities" because it "helps you not only identify and influence referring physicians, but also helps you find new opportunities to expand market share while improving financial performance."

Teeter Dep., p. 69:68:3-69:5, Ex. 9. Under a section labeled "Problems We Solve,"

"Targeted Account Selling," Defendants' website stated:

> Is poor provider data hindering sales? Clear insight fuels sales strategy.
>
> Your sales force is only as effective as the information they have to work with. Bad fax or phone numbers, bad contact information, specialty errors, and lack of accurate affiliation information all waste time. … Arm your sales force with the detailed customer and affiliation information they need by bringing accurate provider information into view. Enclarity gives you the insight to plan your sales and marketing strategy with confidence.

Teeter Dep., p. 77:6-24, Ex. 14.

Defendants' website also had a frequently asked questions page ("FAQs") for

people to consult after receiving VSF Faxes. Teeter Dep., pp. 58:25-59:13, Ex. 5.

The web page address for the provider FAQs was set forth at the bottom of the VSF

faxes. Christ Dep., pp. 22:13-25, 70:7-19, Ex. 1. The provider FAQs webpage stated

that Defendants' health insurer customers would use the responsive information for

marketing to the providers. Teeter Dep. p. 58:25-59:13, Ex. 5. For example, it stated

that Defendants' customers would use the responses for "[m]arket optimization." *Id.*

The webpage also said health insurers would use the information for "researching

health care practitioners for them to become part of a provider network." Teeter Dep.

p. 58:25-59:13, Ex. 5. In other words, recipients of VSF faxes could expect that if

they responded, health insurers would use the information to generally market to the

identified providers and specifically to solicit them to join their insurance networks. *Id.*

**5. Defendants sought to encourage responses to the VSF faxes by touting the value of their service to the providers.**

Defendants' VSF program was a product offered to Defendants' paying clients, but Defendants also presented it as a valuable free service to the fax recipients themselves. Teeter Dep., pp. 51:16-52:6, Ex. 5. For example, the provider FAQs web page stated that by responding:

> you can have greater confidence that medical bills you remit to our customers will be paid promptly and that the information about you and your practice on our customers healthcare provider directories is accurate and up to date, <u>which can help drive more business to you.</u>

Teeter Dep. Ex. 5 (emphasis added).

Similarly, Jill Christ, who managed the team that responded to inquiries about VSF faxes, explained that her team told inquiring fax recipients that their responses would cause health care companies to list the providers in their directories where patients would be more likely to find them and then seek treatment from them. Christ Dep., pp. 21:11-22:9, 75:20-76:14.

**6. Defendants sent [REDACTED] VSF faxes to Plaintiff, but Plaintiff did not respond in any way to any of them.**

Defendants sent a VSF fax to Plaintiff on September 7, 2016. Christ Dep., pp. 18:12-19:1, Ex. 1; Fulton Dep., pp. 217:24-218:19, Ex. 10; Dkt. No. 1-2. [REDACTED]

█ Plaintiff did not know who LexisNexis or Enclarity was and never requested that they contact Dr. Fulton or gave them permission to send him faxes. Fulton Dep. pp. 171:21-172:9, 229:11-17; 234:16-24.

## III. Procedural history.

Plaintiff commenced this class action on October 24, 2016. Dkt. No. 1. Defendants moved to dismiss, arguing that their VSF fax was not an advertisement as defined by the TCPA. Dkt. No. 18. The Court agreed and granted Defendants' motion to dismiss. Dkt. No. 25.

On appeal, the Sixth Circuit reversed and remanded, finding that Plaintiff "plausibly alleged that the fax was an unsolicited advertisement insofar as it alleged that the fax served as a pretext to send [Plaintiff] additional marketing materials." *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 907 F.3d 948, 949 (6th Cir. 2018), *reh'g denied* by*Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 2018 U.S. App. LEXIS 36638 (6th Cir., Dec. 27, 2018).

Defendants then filed a petition for a writ of certiorari. *Enclarity Inc. v. Fulton*, 140 S. Ct. 104 (2019). The Supreme Court granted the petition, vacated the

decision, and remanded, instructing the Sixth Circuit to reconsider in light of the recent opinion in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019).

On remand, the Sixth Circuit found that *PDR* had no impact on its ruling, reaffirming its holding and stating:

> Taking the complaint's allegations as true and drawing all inferences in Fulton's favor, as we must at the motion to dismiss stage, we find that Fulton has adequately alleged that the fax Fulton received was an unsolicited advertisement because it served as a commercial pretext for future advertising opportunities. Fulton has therefore stated a plausible TCPA claim under the fax-as-pretext theory.

*Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 891 (6th Cir. 2020).

The mandate then returned to this Court on July 22, 2020, and the parties conducted discovery. Dkt. No. 39.

## IV. Argument.

### A. Legal standards for class certification.

Rule 23(a) requires that the plaintiff satisfy four prerequisites for class certification: (1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

In addition to satisfying the requirements of Rule 23(a), the plaintiff must also satisfy one of the subsections of Rule 23(b). *Powers v. Hamilton County Public Defender*, 501 F.3d 592, 618 (6th Cir. 2007). Under Rule 23(b)(3), the plaintiff must show that common questions "predominate over any questions affecting only individual class members," and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." While the plaintiff must show that the elements of Rule 23 are satisfied, the plaintiff does not need to do so by reference to "admissible evidence." *Lyngaas*, 992 F.3d at 428.

Class actions promote judicial economy by aggregating small claims into one lawsuit. "Class actions ... permit the plaintiffs to pool claims which would be uneconomical to litigate individually. [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808-809 (1985). The district court has broad discretion in determining whether an action should be certified as a class action, and its decision, based upon the particular facts of the case, should not be overturned absent a showing of abuse of discretion." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). In this case, the criteria of Rule 23(a) and (b)(3) are met, so class treatment of these claims is appropriate.

**B. Plaintiff's proposed class satisfies all of Rule 23's requirements.**

**1. Numerosity.**

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members [of the Class] is impracticable." Fed. R. Civ. P. 23(a)(1). *Afro American Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir. 1974) (A class of 35 employees ruled sufficient). Defendants' records show they sent the VSF faxes to a proposed class of [REDACTED] different fax numbers. Individual joinder of [REDACTED] persons is obviously impracticable, so "numerosity" is satisfied.

**2. Commonality.**

Rule 23(a)(2) requires a common question of law or fact. *Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 884 (6th Cir. 1997). Commonality does not require that all class members share identical claims and facts. *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). Rather, there must be "a single issue common to all members of the class." *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996). The test is "qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *Id.*, 75 F.3d at 1080 (quoting 1 Herbert B. Newberg and Alba Conte, NEWBERG ON CLASS ACTIONS, section 3:10 at 3-50 (3d ed. 1992)). Just "one question common to the class" can satisfy the commonality requirement under Rule 23(a). *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1997).

Here, the claims of the class members are virtually identical [redacted] The case, thus, involves common fact questions about Defendants' VSF fax program, and common legal questions such as: whether the VSF faxes were "advertisements" as defined by the TCPA; whether Defendant violated the TCPA by sending advertisements by fax without first obtaining prior express invitation or permission; whether the Court should award statutory damages to Plaintiff and the other class members; whether Defendant's actions were "knowing or willful" under the TCPA and, if so, whether the Court should treble the statutory damages; whether the faxes included compliant opt-out notices; and whether the Court should enjoin Defendant from sending unsolicited advertisements by facsimile. Resolution of these issues will affect all class members. Therefore, the "commonality" requirement of Rule 23(a)(2) is satisfied.

**3. Typicality.**

A claim meets Rule 23(a)(3)'s "typicality" requirement if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir. 1996) (quoting 1 Herbert B. Newberg and

Alba Conte, NEWBERG ON CLASS ACTIONS, § 3:13 at 3-76 (3d ed. 1992)). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.,* 133 F.3d 388, 399 (6th Cir. 1998) (quoting 1 Herbert B. Newberg and Alba Conte, NEWBERG ON CLASS ACTIONS, § 3:13 at 3-75 (3d ed. 1992)).

When the plaintiff and the other class members will proceed under the same legal theory, typicality is satisfied even if some factual differences exist. *Daffin v. Ford Motor Co.,* 458 F.3d 549, 552-53 (6th Cir. 2006). Here, each of the class members was subjected to the same conduct by Defendants' VSF fax program. Plaintiff's claims are typical because its claims are based on the same facts and arise under the same federal law as every other class member's claims. Therefore, Rule 23(a)(3) is satisfied.

**4. Adequacy of representation – Plaintiff and its attorneys.**

Rule 23(a)(4), "[a]dequate representation depends on two factors: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (quoting *Senter v. General Motors Corp.,* 532 F.2d 511, 525 (6th Cir. 1976)). This requires that there is "no antagonism between the interests of the

plaintiffs and the other members of the class," and that Plaintiff's counsel are competent to represent the class. *Id.* (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.3d 1026, 1031(6th Cir. 1977)).

Here, Plaintiff and the other class members have common claims about Defendants' VSF faxes and Plaintiff's interests do not conflict with the other class members' interests. Plaintiff understands its obligations and the nature of the claims. Fulton Dep., pp. 23:14-24:14 ("I know that I'm representing a class, and I'm going to look out for everyone's best interests, not just my own."), 254:23-255:2, 255:7-14.

Plaintiff's counsel are also experienced class action attorneys and adequate counsel for the class. *See* Plaintiff's counsel firm resumes, (Exhibit I).  *See, e.g.*, *APB Assocs., Inc. v. Bronco's Saloon, Inc.*, 315 F.R.D. 200, 215 (E.D. Mich. 2016) ("Bock has a wealth of experience in TCPA cases."). The firm has been appointed as lead or co-lead counsel in many class actions, including but not limited to TCPA cases. *Id*. The firm has been litigating TCPA claims since 2003, and has prosecuted dozens of such cases to successful resolution, including class-wide settlements. *Id*. If appointed class counsel, here, Plaintiff's counsel will continue to commit adequate resources to ensure that the class is properly represented in this case. Exhibit I (collecting cases in which courts have found Plaintiff's counsel adequate under Fed.

R. Civ. P. 23(g)). Plaintiff and Plaintiff's counsel have demonstrated adequacy, so the requirements of Rule 23(a)(4) are satisfied.

**5. Predominance.**

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions. Rule 23(b)(3)'s predominance requirement resembles Rule 23(a)(2)'s commonality requirement, *Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004), but Rule 23(b)(3) requires something more. "The commonality requirement is satisfied if there is a single factual or legal question common to the entire class. *Am. Med. Sys.*, 75 F.3d at 1080. The predominance requirement is met if this common question is at the heart of the litigation." *Powers*, 501 F.3d at 619.

Here, common factual issues are at the heart of the class's claims because all class members were targeted by Defendants' uniform and consistent implementation of its VSF mass faxing program. Furthermore, common legal issues predominate because the class members' claims arise under a single, identical federal statute.

**a. Defendants' expected speculation with respect to their affirmative defense of permission does not prevent class certification.**

Defendants are likely to argue that issues of consent prevent class certification, but given the class definition proposed by Plaintiff and the record in this case, Defendants' argument will fail. The TCPA provides that a person must have "prior express invitation or permission" before sending a fax ad. 47 U.S.C. §

227(a)(5); *Satterfield v. Simon & Schuster*, 569 F.3d 946, 955 (9th Cir. 2009) ("Express consent is consent that is clearly and unmistakably stated.")[3] Permission is, thus, an affirmative defense to a TCPA action, and the defendant has the burden of proving permission. *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC,* 950 F.3d 959, 964-65 (7th Cir. 2020); *see also Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 565 (E.D. Pa. 2019).

In the context of class certification, where a defendant challenges predominance based on a permission defense, the issue must be analyzed in the context of the defendant's affirmative burden to prove prior express permission. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018). The Sixth Circuit has held that "speculation alone regarding individualized consent was insufficient to defeat plaintiffs' showing of predominance under Rule 23(b)(3)" where the plaintiff has presented "class-wide evidence … showing an absence of consent." *Bridging Communities*, 843 F.3d at 1125-26.

Here, the evidence shows that Defendants did not seek permission before sending their VSF faxes. Suk Dep., p. 107:3-25. Because Plaintiff has limited the

[3] The TCPA provides an exception where the fax sender has an established business relationship (EBR) with the target, and the fax contains an opt-out notice as required by 47 U.S.C. § 227 (b)(1)(C)(iii), (2)(E). Here it is undisputed that Defendant VSF faxes sent before December 6, 2016, did not contain a valid opt-out notice thus eliminating any potential for an EBR defense.

class to persons with whom Defendants have no records of any contact, and Defendants have admitted they did not seek prior permission, there is class-wide evidence showing a lack of "prior express invitation or permission" here. Defendants can, thus, only speculate that it is somehow possible that some class members might have given prior express permission. As in *Bridging Communities*, such speculation will not be enough to defeat class certification. 843 F.3d at 1125-26; s*ee also Arwa Chiropractic, P.C. v. Med-Care Diabetic & Medical Supplies, Inc.,* 322 F.R.D. 458, 467-468 (N.D. Ill. Sept. 29, 2017) ("At best, Defendants confused implied consent for the express consent required under the TCPA"). Common issues predominate and class certification is appropriate.

**b. The possibility that some class members may have subscribed to a cloud-based fax service does not show common issues do not predominate.**

Defendant is also expected to argue that faxes received through computers or "online fax services" are not actionable under the TCPA, creating individualized issues and defeating commonality. The Sixth Circuit has already rejected this argument in identical circumstances. *Lyngaas v. Ag*, 992 F.3d 412, 425-27 (6th Cir. 2021). *See also Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("The statute provides a $500 penalty for the annoyance. 47 U.S.C. § 227(b)(3)(B). Even a recipient who gets the fax on a computer and deletes it without printing suffers *some*

loss: the value of the time necessary to realize that the inbox has beenp cluttered by junk. That loss, and the statutory remedy, are the same for all recipients….")

Here, as in *Lyngaas*, all the faxes at issue were sent before the FCC's consumer affairs bureau issued *In re Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling et al.*, 34 FCC Rcd 11950 (F.C.C. Dec. 9, 2019). As such, that FCC decision is a non-issue here, as in *Lyngaas.* 992 F.3d at 427 ("the ruling in any event would have no bearing on the case before us because the operative facts here took place more than three years earlier").

Moreover, as the Sixth Circuit noted, *Amerifactors* was a not a decision by Commission, and it is subject to appeal to the Commission. *Id.* It also appears to contradict an earlier decision by the same bureau, so its authority is in question. *In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd 8620 (F.C.C. Aug. 28, 2015).[4]

---

[4]    The *Amerifactors* decision is also based on erroneous assumptions about faxing technology. Howard Supp. Report, ¶¶ 18-23. This casts further doubt on *Amerifactors*' soundness. In any event, even if some subset of the fax recipients here were entirely excluded from the protection of the TCPA based on a technological issue, that issue could be resolved by a simple, post-trial claims process if Plaintiff prevails on the merits. *See, e.g.*, *Lyngaas v. Ag*, 992 F.3d 412, 432 (6th Cir. 2021) (approving use of a post-trial claims process to identify individual members of a junk fax class action after trial on the merits.); *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 313-314 (D.N.J. 2013) (same); *see also Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 WL 3206324, *5 (M.D.N.C. July 27, 2017) (describing claims process to specifically identify certain TCPA class members after resolution on the merits).

**6. Superiority.**

Finally, Rule 23(b)(3) requires that a class action be the superior method for adjudicating the claims. Certifying a class is the superior way to adjudicate claims when a "class action would achieve economies of time, effort, and expense, and promote...uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). In *Amchem*, the Supreme Court noted that one of Rule 23's underlying purposes is "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id*. at 617 (internal citations omitted). *See also Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 446 (E.D. Mich. 2015) (finding class action a superior method in an analogous TCPA case); *Compressor Engineering Corporation v. Charles J. Thomas, Jr.*, 319 F.R.D. 511, 530 (E.D. Mich. Dec. 29, 2016) ("it is unrebutted that there are some 6,000 potential class members in this action. It is not logical to believe that having 6,000 individual lawsuits (whether in state court or federal court) would be more efficient or a better use of judicial resources.").

In this case, where common issues predominate, all the other Rule 23 requirements are satisfied, the class includes numerous persons, the likely recovery is relatively small, and the practice should be enjoined, a class action is far superior to the other available methods for resolving this controversy. A class action is the

*best* available method of adjudication that would be fair and efficient, and an individual case would result in a "negative value" for each individual plaintiff representing itself. This is the only litigation still pending about this class.

## V. Conclusion

For the foregoing reasons, the Court should grant Plaintiff's motion for class certification.

Dated: January 18, 2022

Respectfully submitted,

By: /s/ *Phillip A. Bock*
One of Plaintiff's Attorneys

Phillip A. Bock
Robert M. Hatch (P46566)
Jonathan B. Piper
Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
(312) 658-5500
(312) 658-5555 (fax)
service@classlawyers.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2022, a true and correct copy of the foregoing was filed using the Court's ECF system, which automatically serves a copy upon all counsel of record.

By: /s/ Phillip A. Bock
One of Plaintiff's Attorneys

**Index of Exhibits to Motion and Memorandum in Support of Class Certification in 16-CV-13777 *Fulton v. Enclarity***

| Document | Detailed description | Public ECF Filing | Filed under seal |
|---|---|---|---|
| Exhibit A - Declaration of Lee Howard<br><br>Party asserting Confidentiality: Defendants, except that Plaintiff is asserting confidentiality as to its fax number in paragraph 29 of Ex. A-1. | Declaration | Original | - |
| | Ex. A-1, Expert Report dated 9/29/21 with Appendixes | Redacted Copy | Unredacted Original |
| | Ex. 1(A) (Native) | To be filed under seal | Original Native |
| | Ex. 1(B) (Native) | To be filed under seal | Original Native |
| | Ex. 2, Supplemental Rebuttal Expert Report dated 12/21/21 with Appendixes | Redacted Copy | Unredacted Original |
| | Ex. A-2(A) (Native) | To be filed under seal | Original Native |
| | Ex. A-2(B) (Native) | To be filed under seal | Original Native |
| | Ex. A-2(C) (Native) | To be filed under seal | Original Native |
| Exhibit B – Transcript of Thomas Suk deposition taken on 9/3/21<br><br>Party asserting Confidentiality: Defendants | Transcript | Redacted Copy | Unredacted Original |
| | Dep. Ex. 1 | Original | - |
| | Dep. Ex. 2 | Original | - |
| | Dep. Ex. 2A | To be filed under seal | Original |
| | Dep. Ex. 2B | To be filed under seal | Original |
| | Dep. Ex. 3 | Original | - |
| | Dep. Ex. 4 | To be filed under seal | Original |
| | Dep. Ex. 5 | Original | - |
| | Dep. Ex. 6 | Original | - |
| | Dep. Ex. 7 | To be filed under seal | Original |
| | Dep. Ex. 8 | Original | - |
| | Dep. Ex. 9 | Original | - |

| | | | |
|---|---|---|---|
| | Dep. Ex. 10 | Original | - |
| | Dep. Ex. 11 | Original | - |
| | Dep. Ex. 12 | Original | - |
| | Dep. Ex. 13 | Original | - |
| | Dep. Ex. 14 | Original | - |
| | Dep. Ex. 15 | Original | - |
| | Dep. Ex. 16 | Original | - |
| | Dep. Ex. 17 | Original | - |
| | Dep. Ex. 18 | Original | - |
| | Dep. Ex. 19 | Original | - |
| | Dep. Ex. 21 | Original | - |
| | Dep. Ex. 22 | To be filed under seal | Original |
| | Dep. Ex. 23 | Original | - |
| | Dep. Ex. 24 | Original | - |
| | Dep. Ex. 25 | Original | - |
| | Dep. Ex. 27 | Original | - |
| | Dep. Ex. 28a | Original | - |
| | Dep. Ex. 28b | Original | - |
| | Dep. Ex. 28c | Original | - |
| | Dep. Ex. 28d | Original | - |
| | Dep. Ex. 28e | Original | - |
| | Dep. Ex. 28f | Original | - |
| Exhibit C – Transcript of Brian Teeter deposition taken on 9/14/21 Party asserting Confidentiality: Defendants | Transcript | Redacted Copy | Original Native |
| | Dep. Ex. 1 | Original | - |
| | Dep. Ex. 2 | Original | - |
| | Dep. Ex. 3a | To be filed under seal | Original |
| | Dep. Ex. 3b | To be filed under seal | Original |
| | Dep. Ex. 3e | Original | - |
| | Dep. Ex. 4a | To be filed under seal | Original |
| | Dep. Ex. 4b | To be filed under seal | Original |
| | Dep. Ex. 4c | To be filed under seal | Original |
| | Dep. Ex. 4d | To be filed under seal | Original |
| | Dep. Ex. 4e | To be filed under seal | Original |
| | Dep. Ex. 5 | Original | - |
| | Dep. Ex.6 | Original | - |
| | Dep. Ex. 7 | Original | - |
| | Dep. Ex. 8 | Original | - |
| | Dep. Ex. 9 | Original | - |
| | Dep. Ex. 10 | Original | - |

| | | | |
|---|---|---|---|
| | Dep. Ex. 11 | Original | - |
| | Dep. Ex. 12 | Original | - |
| | Dep. Ex. 13 | Original | - |
| | Dep. Ex. 14 | Original | - |
| | Dep. Ex. 15 | Original | - |
| | Dep. Ex. 17 | Original | - |
| | Dep. Ex. 18 | Original | - |
| | Dep. Ex. 20 | To be filed under seal | Original |
| | Dep. Ex. 23 | To be filed under seal | Original |
| Exhibit D – Transcript of Alan Bergman deposition taken on 9/1/21 | Transcript | Redacted Copy | Unredacted Original |
| Exhibit E – Transcript of Jill Christ deposition taken on 8/23/21 | Dep. Ex. 1 | To be filed under seal | Original |
| | Dep. Ex. 1a | To be filed under seal | Original |
| | Dep. Ex. 2 | To be filed under seal | Original |
| | Dep. Ex. 2a | To be filed under seal | Original |
| | Dep. Ex. 2b | To be filed under seal | Original |
| | Dep. Ex. 3 | To be filed under seal | Original |
| | Dep. Ex. 3a | To be filed under seal | Original |
| | Dep. Ex. 4 | To be filed under seal | Original |
| | Dep. Ex. 4a | To be filed under seal | Original |
| | Dep. Ex. 5 | To be filed under seal | Original |
| | Dep. Ex. 5a | To be filed under seal | Original |
| | Dep. Ex. 6 | To be filed under seal | Original |
| | Dep. Ex. 6a | To be filed under seal | Original |
| | Dep. Ex. 7 | To be filed under seal | Original |
| | Dep. Ex. 7a | To be filed under seal | Original |
| | Dep. Ex. 8 | To be filed under seal | Original |
| | Dep. Ex. 8a | To be filed under seal | Original |
| | Dep. Ex. 9 | To be filed under seal | Original |
| | Dep. Ex. 9a | To be filed under seal | Original |
| | Dep. Ex. 9b | To be filed under seal | Original |
| | Dep. Ex. 14 | To be filed under seal | Original |
| | Dep. Ex. 15 | Original | - |
| | Dep. Ex. 16a | To be filed under seal | Original |
| | Dep. Ex. 16b | To be filed under seal | Original |
| | Dep. Ex. 17 | To be filed under seal | Original |
| | Dep. Ex. 18 | To be filed under seal | Original |
| | Dep. Ex. 19 | To be filed under seal | Original |
| | Dep. Ex. 20 | To be filed under seal | Original |

| | | | |
|---|---|---|---|
| | Dep. Ex. 21 | To be filed under seal | Original |
| | Dep. Ex. 22a | To be filed under seal | Original |
| | Dep. Ex. 22b | To be filed under seal | Original |
| | Dep. Ex. 22c | To be filed under seal | Original |
| | Dep. Ex. 22d | To be filed under seal | Original |
| | Dep. Ex. 23 | Original | - |
| | Dep. Ex. 28 | Original | - |
| | Dep. Ex. 28a | Original | - |
| | Dep. Ex. 34 | Original | - |
| | Dep. Ex. 40 | Original | - |
| Exhibit E – Transcript of Jill Christ deposition taken on 8/23/21 Exhibit F – <br><br>Party asserting Confidentiality: Defendants | Transcript | Redacted | Unredacted Original |
| | Dep. Ex. 1 | Unredacted Original | - |
| | Dep. Ex. 2 | To be filed under seal | Original |
| | Dep. Ex. 3 | To be filed under seal | Original |
| | Dep. Ex. 5 | To be filed under seal | Original |
| | Dep. Ex. 6 | To be filed under seal | Original |
| | Dep. Ex. 8a | To be filed under seal | Original |
| | Dep. Ex. 8b | To be filed under seal | Original |
| | Dep. Ex. 8c | To be filed under seal | Original |
| | Dep. Ex. 10 | To be filed under seal | Original |
| | Dep. Ex. 11a | To be filed under seal | Original |
| | Dep. Ex. 11b | To be filed under seal | Original |
| | Dep. Ex. 11c | To be filed under seal | Original |
| | Dep. Ex. 11d | To be filed under seal | Original |
| | Dep. Ex. 11e | To be filed under seal | Original |
| | Dep. Ex. 13 | To be filed under seal | Original |
| | Dep. Ex. 21a | To be filed under seal | Original |
| | Dep. Ex. 21b | To be filed under seal | Original |
| | Dep. Ex. 21c | To be filed under seal | Original |
| | Dep. Ex. 21d | To be filed under seal | Original |
| Exhibit F – Transcript of Matthew Fulton deposition taken on 6/11/21 Exhibit G – | Transcript | Redacted | Unredacted Original |
| | Dep. Ex. 1 | Original | - |
| | Dep. Ex. 2 | Original | - |
| | Dep. Ex. 3 | Original | - |
| | Dep. Ex. 4 | Original | - |
| | Dep. Ex. 5 | Original | - |
| | Dep. Ex. 6 | Original | - |

| | | | |
|---|---|---|---|
| Party asserting Confidentiality: Plaintiff | Dep. Ex. 7 | Original | - |
| | Dep. Ex. 8 | Original | - |
| | Dep. Ex. 9 | Original | - |
| | Dep. Ex. 10 | Original | - |
| | Dep. Ex. 11 | Original | - |
| | Dep. Ex. 12 | Original | - |
| | Dep. Ex. 13 | To be filed under seal | Original |
| | Dep. Ex. 14 | Original | - |
| | Dep. Ex. 15 | Original | - |
| | Dep. Ex. 16 | Original | - |
| Exhibit G – Transcript of Aleks Szymanski deposition taken on 9/17/21<br><br>Party asserting Confidentiality: None | Transcript | Original | - |
| | Dep. Ex. 1 | Original | - |
| | Dep. Ex. 3 | Original | - |
| | Dep. Ex. 4 | Original | - |
| | Dep. Ex. 5 | Original | - |
| | Dep. Ex. 6 | Original | - |
| Exhibit H – Transcript of Josh Schoeller deposition taken on 9/17/21<br><br>Party asserting Confidentiality: Defendants | Transcript | Redacted | Unredacted Original |
| | Dep. Ex. 1 | Original | - |
| | Dep. Ex. 3 | To be filed under seal | Original |
| | Dep. Ex. 4 | To be filed under seal | Original |
| | Dep. Ex. 6 | To be filed under seal | Original |
| | Dep. Ex. 9 | Original | - |
| | Dep. Ex. 10 | Original | - |
| | Dep. Ex. 11 | Original | - |
| | Dep. Ex. 12 | Original | - |
| | Dep. Ex. 13 | Original | - |
| | Dep. Ex. 14 | Original | - |
| | Dep. Ex. 15 | Original | - |
| | Dep. Ex. 16 | Original | - |
| | Dep. Ex. 17 | Original | - |
| | Dep. Ex. 18 | Original | - |
| | Dep. Ex. 19 | Original | - |

| | | | |
|---|---|---|---|
| | Dep. Ex. 20 | Original | - |
| | Dep. Ex. 21 | Original | - |
| | Dep. Ex. 21A | Original | - |
| | Dep. Ex. 21B | Original | - |
| | Dep. Ex. 22 | Original | - |
| | Dep. Ex. 23 | To be filed under seal | Original |
| | Dep. Ex. 25 | To be filed under seal | Original |
| | Dep. Ex. 26 | To be filed under seal | Original |
| | Dep. Ex. 27 | To be filed under seal | Original |
| | Dep. Ex. 28 | To be filed under seal | Original |
| | Dep. Ex. 29 | To be filed under seal | Original |
| | Dep. Ex. 30 | To be filed under seal | Original |
| | Dep. Ex. 31 | Original | - |
| Exhibit I – Firm Resume<br><br>Party asserting Confidentiality: None | Firm Resume | Original | - |