REDACTED VERSION OF DOCUMENT TO BE SEALED

# THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW N. FULTON, DDS, P.C., individually and as the representative of a class of similarly-situated persons, <br><br> Plaintiff, <br><br> v. <br><br> ENCLARITY, INC., LEXISNEXIS RISK SOLUTIONS INC., LEXISNEXIS RISK SOLUTIONS GA INC., LEXISNEXIS RISK SOLUTIONS FL INC., and JOHN DOES 1-12, <br><br> Defendants. | Case No. 16-CV-13777 <br><br><br> Chief District Judge Denise Page Hood <br> Magistrate Judge R. Steven Whalen <br><br> **PUTATIVE CLASS ACTION** |

## DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFF'S EXPERT WITNESS LEE HOWARD

Defendants Enclarity, Inc.; LexisNexis Risk Solutions Inc.; LexisNexis Risk Solutions GA Inc.; and LexisNexis Risk Solutions FL Inc. (collectively, "Defendants") move this Court for an Order excluding certain opinions of Plaintiff's proffered expert witness Lee Howard. The reasons for this Motion are set forth in the accompanying Memorandum in Support. Pursuant to LR 7.1(a), the undersigned counsel certifies that parties met and conferred regarding the issues presented herein on February 18, 2022, and Plaintiff indicated it would oppose this motion.

Dated:  February 22, 2022          MORRISON & FOERSTER LLP


By:   */s/ Tiffany Cheung*
         Tiffany Cheung (CA SBN 211497)
         425 Market Street
         San Francisco, CA  94105
         (415) 268-7000
         tcheung@mofo.com



DICKINSON WRIGHT PLLC


By:   */s/ Amy Sabbota Gottlieb*
         Amy Sabbota Gottlieb (P67020)
         2600 West Big Beaver Road, Suite 300
         Troy, MI  48084
         (248) 433-7286
         agottlieb@dickinsonwright.com

*Attorneys for Defendants*

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO
EXCLUDE CERTAIN OPINIONS OF PLAINTIFF'S
EXPERT WITNESS LEE HOWARD**

## ISSUES PRESENTED

Whether Plaintiff's proffered expert witness, Lee Howard, must be excluded by this Court from offering expert witness testimony (i) that an unverified and unauthenticated data column called "Deliveries" somehow reliably demonstrates the number of successfully delivered faxes and (ii) that all faxes, including faxes received via an online fax service, are necessarily received on a "telephone facsimile machine" encompassed by the Telephone Consumer Protection Act ("TCPA").

## <u>CONTROLLING AUTHORITY</u>

Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as well as case law discussed below, compel exclusion of Howard's opinions.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...........................................................................................1

II.  PROCEDURAL HISTORY ...........................................................................2

III. FACTUAL BACKGROUND..........................................................................2

    A.   Howard Relies on Data Provided by Third-Party Scrypt....................2

    B.   There Is No Evidence That the Sfax Data Shows Successful
        Deliveries...............................................................................................4

        1.   The Sfax "Deliveries" Data does not Support Howard's
             Opinion................................................................................4

        2.   Mr. Bergman's Testimony does not Support Howard's
             Opinion................................................................................6

        3.   Scrypt's Testimony does not Support Howard's Opinion.........7

        4.   The 12 Returned Faxes on which Howard relies are not
             part of Plaintiff's Alleged Class.................................................8

    C.   Contrary to an FCC Ruling, Howard Opines that All Fax
        Equipment Has the Capacity to Transcribe the Image to Paper. .........9

IV.  LEGAL STANDARD ...................................................................................11

V.   ARGUMENT................................................................................................13

    A.   A *Daubert* Analysis of Howard's Opinions Is Appropriate at
        the Class Certification Stage. .............................................................13

    B.   Howard's Testimony Regarding Deliveries Is Inadmissible
        Because It Is Unreliable and Unpersuasive........................................15

        1.   The Record does not Support Howard's Speculative
             Opinions regarding the Sfax "Deliveries" Data......................16

        2.   Howard Cannot Establish the Reliability of the Data
             based on Assumptions and Speculation....................................19

    C.   Howard's Opinion That All Faxes, Even Those Received on an
        OFS, Are Received on a 'Telephone Facsimile Machine' Is
        Contrary to Law..................................................................................23

VI.  CONCLUSION.............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling; Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot. Act of 2005*, 34 FCC Rcd. 11950, 11950-51 (Dec. 9, 2019) ........................................................10, 24

*In re Behr Dayton Thermal Prods., LLC*,
2015 U.S. Dist. LEXIS 194279 (S.D. Ohio Feb. 27, 2015) ........................12, 14

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
2019 U.S. Dist. LEXIS 50949 (S.D. Cal. Mar. 26, 2019)................................25

*In re Carpenter Co.*,
2014 U.S. App. LEXIS 24707 (6th Cir. Sept. 29, 2014) ...................................12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ...................................................................................*passim*

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
382 F. Supp. 3d 687 (E.D. Mich. 2019) .....................................................12, 13

*In re Flint Water Cases*,
2021 U.S. Dist. LEXIS 165251 (E.D. Mich. Aug. 31, 2021)............................12

*Innovative Acct. Sols., Inc. v. Credit Process Advisors, Inc.*,
335 F.R.D. 106 (W.D. Mich. 2020)............................................................. 13-14

*Kondash v. Kia Motors Am., Inc.*,
2020 U.S. Dist. LEXIS 181733 (S.D. Ohio Sept. 30, 2020) .............................14

*Lyngaas v. Curaden AG*,
992 F.3d 412 (6th Cir. 2021) ..........................................................11, 16, 19, 21

*Lyngaas v. Curaden AG*,
2019 U.S. Dist. LEXIS 201986 (E.D. Mich. Nov. 21, 2019),
judgment entered, 436 F. Supp. 3d 1019 (E.D. Mich. 2020) .....................*passim*

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
    523 F.3d 1051 (9th Cir. 2008) .............................................................25

*Schechner v. Whirlpool Corp.*,
    2019 U.S. Dist. LEXIS 31704 (E.D. Mich. Feb. 28, 2019)................................12

*United States v. Bonds*,
    12 F.3d 540 (6th Cir. 1993) ..............................................................11

**Statutes & Rules**

47 C.F.R. § 1.2 ...........................................................................10

Fed. R. Civ. P. 23 ........................................................................14

Fed. R. Evid.
    703.....................................................................................17
    901(b)(9) ..............................................................................21

**Other Authorities**

Request for Comment on Amerifactors Fin. Grp., LLC Petition for
    Expedited Declaratory Ruling under the TCPA of 1991, DA 19-
    1247 (Dec. 9, 2019) .................................................................10

Robert Biggerstaff, Reply Comments In the Matter of Amerifactors
    Fin. Grp., LLC, Petition for Expedited Declaratory Ruling (Sept. 1,
    2017), https://www.fcc.gov/ecfs/filing/10902271392966...................... 10-11, 24

## I.    INTRODUCTION

Plaintiff's Motion for Class Certification ("Motion") relies on opinions offered by Plaintiff's expert Lee Howard ("Howard") that should be excluded as unsupported, speculative, and unreliable or contrary to the law.

*First*, Howard's opinion that Plaintiff's Class List identifies ████ successful fax transmissions relies solely on summary data provided by a third party, Scrypt, Inc., to Enclarity, Inc.  There is *no evidence* to support Howard's speculative conclusion that this data represents successfully delivered faxes, and there is no witness—including Scrypt itself—who could provide information about how the data was created or verify its accuracy.  Howard's "opinion" amounts to nothing more than speculation regarding the data.  Howard attempts to mask his speculation by asserting that the numbers identified in a column of data supposedly represent "data that experts in this field would rely on," but in a recent decision affirmed by the Sixth Circuit, the court rejected this strategy and excluded Howard's nearly identical opinion in another TCPA class action.

*Second*, Plaintiff's Motion also relies on the erroneous opinion that all faxes on the Class List, including those received via an online fax service ("OFS"), were received on a "telephone facsimile machine" under the TCPA.  Howard's opinion regarding the scope of a "telephone facsimile machine" should be excluded

because it contradicts the law established in a Federal Communications Commission ruling.

Because Plaintiff relies on Howard's opinions regarding "successful transmissions" and the scope of a "telephone facsimile machine" in attempting to satisfy the rigorous requirements for class certification, a *Daubert* analysis of Howard's opinions is appropriate at this stage—and reveals that Howard's opinions are too unreliable and speculative and must be excluded.[1]

## II.   PROCEDURAL HISTORY

On September 30, 2021, Plaintiff served the first report of their expert Lee Howard.  (Ex. 6.)  On November 19, 2021, Defendants served a rebuttal report of James Bress in response to certain of Howard's opinions.  (Ex. 5.)  On December 22, 2021, Plaintiff served a (Supplemental Rebuttal) Expert Report of Lee Howard. (Ex. 13.)  On January 18, 2022, Plaintiff filed its Motion for Class Certification. (ECF No. 115.)  On January 25, 2022, Defendants filed a motion for summary judgment.  (ECF No. 118.)

## III.   FACTUAL BACKGROUND

### A.   Howard Relies on Data Provided by Third-Party Scrypt.

Enclarity retained a third party called Scrypt to send Verified Secure Faxes

---

[1] Defendants' motion is directed at certain of Howard's opinions relied upon by Plaintiff in its class certification motion, but Defendants reserve all rights to file future motions to exclude Plaintiff's expert's opinions at the appropriate time.

("VSF Faxes") to certain healthcare providers ("HCPs") to request verification of the fax numbers that could be used to send confidential patient information to those HCPs.  (Ex. 1 at 10:8-10; *see* ECF No. 118 at 4-5.)  Scrypt used an online faxing solution called Sfax that was custom-built for Enclarity to send the VSF Faxes.[2]  (Ex. 1 at 9:9-23, 20:6-21:17, 22:12-20.)  In response to Plaintiff's discovery requests, Enclarity extracted and produced data from a database called ███████ in the form of summary spreadsheets (which Plaintiff refers to as "Transmission Data").  (Ex. 2 at 11:24-12:4, 14:8-11, 51:10-16.)  As explained by Enclarity's Manager of Data Engineering, Alan Bergman, ████████████████████ ████████████████████████████████████ ██████████████████████████████████████ █████████████████████████████ (*id.* at 18:2-4, 19:10-13, 31:16-22) ██ ███████████████████████████████████ ██████████████████████████████████████ ███████ (*id.* at 32:5-16, 107:8-23), █████████████████████████ ██████████████████████████████████ ████████████████████████ (*id.* at 32:24-33:8)

_____

[2] Scrypt, Inc. was previously known as SecureCare Technologies, Inc.  The parties have referred to "Scrypt" and "Sfax" interchangeably to refer to the entity.

(collectively, "Sfax Data").[3] ████████████████████████████

████████████████████████ (*Id.* at 32:5-33:20, 85:14-17.)  Mr. Bergman

does not rely on the delivery information from Sfax as part of his job.  (*Id.* at

134:23-25.)

> ## B.  There Is No Evidence That the Sfax Data Shows Successful Deliveries.

████████████████████████████████████████████

████████████████████████████████████

████████████████████ (Ex. 6 ¶ 39), the evidence in the record does not

support Howard's conclusory assertion.  ████████████████████

████████████████████████████████████████

████████████████████████████████

████████████ (Ex. 4 at 132:7-133:2, 138:1-140:12, 184:7-187:12.)

> ### 1.  The Sfax "Deliveries" Data does not Support Howard's Opinion.

████████████████████████████████████████████

---

[3] ██████████████████████████████████████
████████████████████████ (Ex. 2 at 32:5-16, 107:8-23.)
Any records regarding VSF Faxes sent to such HCPs are *not* part of Plaintiff's
Class List.  (ECF No. 115 at 3-4.)  To create its Class List, Plaintiff "[r]emov[ed]
all fax numbers for which Defendants have any record of any contact, other than
their transmission of the VSF faxes themselves."  (*Id.* at 3.)  Any Sfax Data
regarding information about *responses* received by Sfax is not relevant to the fax
numbers on the Class List.



(Ex. 4 at 137:7-21.)  But the data shows no such thing.

(*Id.* at 133:5-19.)[4]

(Ex. 4 at 132:11-133:2),

(*see* ECF No. 115-6).

---

[4] Howard describes an MCF signal as a message confirmation from the sender. (Ex. 6 ¶ 19.)

2.    **Mr. Bergman's Testimony does not Support Howard's Opinion.**

Contrary to Howard's opinion (Ex. 6 ¶ 35) and Plaintiff's assertion in its

Motion (ECF No. 115 at 3), Mr. Bergman never testified that Enclarity received

data showing which fax transmissions were successfully delivered.  Indeed,

(Ex. 2 at 32:24-33:8.)[5]

When Mr. Berman was questioned in his deposition regarding the accuracy

of the "Deliveries" column, he testified:



_____

5

(Ex. 7 at 316:11-25.)

(Ex. 2 at 32:24-33:8.)

(Ex. 2 at 49:6-25 (objections omitted).) ████████████████████████████

████████████████████████ (*Id.* at 133:12-134:22.)

### 3. Scrypt's Testimony does not Support Howard's Opinion.

Given that Enclarity could not authenticate or attest to the reliability of data imported from Sfax, Plaintiff served several subpoenas on Scrypt and filed a motion to compel in the Western District of Texas, which was denied. *Fulton v. Scrypt, Inc.*, Case No. 1:21-mc-00670-LY (W.D. Tex. 2021). Scrypt did not locate or produce any documents in this litigation. (Ex. 1 at 32:18-33:10.)

Plaintiff ultimately took a deposition of Scrypt's corporate representative, Aleks Szymanski, on September 17, 2021. (*Id.* at 7:8-11.) Mr. Szymanski testified that the Sfax application custom built for Enclarity did not have the same levels of functionality that the mainstream Sfax product had, and he had no knowledge of whether the Sfax Enclarity system had the ability to track whether faxes were successfully delivered. (*Id.* at 21:12-22:3.) The Scrypt representative provided no information about the technology or functionality of the Sfax system used for Enclarity. (*Id.* at 21:18-22:20, 33:18-25, 39:3-10.) Mr. Szymanski also could not authenticate or provide any information about any reports Sfax created that were downloadable by Enclarity. (*Id.* at 25:16-21.) Mr. Szymanski could not explain how any data that Sfax itself would have compared to any data that Enclarity might have downloaded. (*Id.* at 32:18-33:10.) When questioned regarding the accuracy

of Sfax's deliveries data, he acknowledged potential errors in this data:  "There were bound to be occasions when faxes were considered to be delivered and they weren't, or vice versa.  I don't have any specifics.  I can't recall any specifics or any data because it's a long time ago."  (*Id*. at 27:10-14.)[6]

### 4. The 12 Returned Faxes on which Howard relies are not part of Plaintiff's Alleged Class.

████████████████████████████████████████████████████████

████████████████████████████  (Ex. 6 ¶ 38.)  Those isolated faxes have not

been authenticated, and in any event, any successful transmissions to those fax

numbers are irrelevant because those fax numbers are *not* included in Plaintiff's

Class List.  (ECF No. 115 at 3-4; ECF No. 115-6.)[7]

---

[6] In its Motion, Plaintiff mischaracterizes certain Scrypt testimony to claim that the Sfax Data shows successful fax transmissions.  (Mot at 3; *see also* Ex. 1 at 23:13-24:10, 27:16-29:5.)  The testimony Plaintiff cites, however, actually discusses barcodes used for "managing the receipt of faxes . . . that came back" and that Sfax used a "responder utility," which was for "getting a *response* from the healthcare provider or recipient."  (*Id*. at 23:13-24:10, 27:16-29:5 (emphasis added).)  This testimony has nothing to do with "Deliveries" or faxes *sent* by Sfax.
[7] Howard's report and Plaintiff's Motion also reference testimony from Jill Christ as supporting a conclusion that the Sfax Data shows successful deliveries (Ex. 6 ¶ 35; ECF No. 115 at 3), though Howard did not list that testimony among the evidence he claimed to rely upon for this conclusion (Ex. 4 at 132:7-133:2; 138:1-140:12; 184:7-187:12.)  In any event, Ms. Christ's testimony does not support Howard's speculative opinion.  (*See* ECF No. 115 at 3; *see also* Ex. 3 at 24:21-25:25 ████████████████████████████████████████████████████████████████████

**C.**   **Contrary to an FCC Ruling, Howard Opines that All Fax Equipment Has the Capacity to Transcribe the Image to Paper.**

In an attempt to evade the individualized inquiries required to identify

putative class members that received a fax on a "telephone facsimile machine,"

Plaintiff relies on ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ (Ex. 6 ¶ 23; *see* ECF No. 115 at

22.)  At his deposition, ████████████████████████



(Ex. 4 at 145:17-146:6.)  Likewise, ██████████████████████████

████████████████████████████████████████████████████

████████████████ (*Id*. at 147:7-16, 150:3-19.)  Howard's opinion, however,

directly contradicts a declaratory ruling issued by the Federal Communications

Commission, the agency with delegated authority to interpret the TCPA.  *In the*

*Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling;*

*Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot.*

*Act of 2005*, 34 FCC Rcd. 11950, 11950-51, ¶ 3 (Dec. 9, 2019) ("*Amerifactors*");

*see also* 47 C.F.R. § 1.2 (FCC regulation implementing agency's authority to issue

declaratory ruling).)



████████████████████████████████████

████████████████████████████████ (Ex. 4 at

158:8-13.) ████████████████████████████

████████████████████████████████████

████████████████████████████████ (Ex. 13

¶ 18.) ████████████████████████████

████████████████████████ (Ex. 7 at 294:15-21, 296:12-18), this

opinion was presented to the FCC in the comments submitted before the FCC

issued its *Amerifactors* ruling.  *See* Request for Comment on Amerifactors Fin.

Grp., LLC Petition for Expedited Declaratory Ruling under the TCPA of 1991, DA

19-1247 (Dec. 9, 2019); *see* Robert Biggerstaff, Reply Comments In the Matter of

Amerifactors Fin. Grp., LLC, Petition for Expedited Declaratory Ruling (Sept. 1,

2017), https://www.fcc.gov/ecfs/filing/10902271392966 ("Biggerstaff Reply Comments").  After considering comments reflecting Howard's opinion, the FCC rejected that opinion in finding that OFS **do not** have the capacity to print and are not "telephone facsimile machines" encompassed by the TCPA.

## IV.   LEGAL STANDARD

To be admissible under Federal Rule of Evidence 702, an expert's opinion must be both reliable and helpful to the trier of fact.  *Daubert*, 509 U.S. at 597. Rule 702 places a special obligation on the trial court to act as a gatekeeper, ensuring that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Lyngaas v. Curaden AG*, 2019 U.S. Dist. LEXIS 201986, at *40 (E.D. Mich. Nov. 21, 2019) ("*Lyngaas I*") (quoting *Daubert*, 509 U.S. at 589), judgment entered, 436 F. Supp. 3d 1019 (E.D. Mich. 2020), *aff'd sub nom*. *Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021) ("*Lyngaas II*").

Experts are permitted to testify "on the basis of hearsay or unadmitted evidence, as long as the evidence is of a kind reasonably relied upon by experts in the particular field."  *Id.* at *41 (quoting *United States v. Bonds*, 12 F.3d 540, 566 (6th Cir. 1993)).  An expert opinion must be supported by "good grounds" that are based on what is "known," not unsupported speculation.  *Daubert*, 509 U.S. at 590.

The Sixth Circuit has held that "when considering expert testimony which is offered to inform the Court's Rule 23 analysis, the Court does not abuse its

discretion by invoking the familiar *Daubert* framework to evaluate whether the expert's opinion is sufficiently reliable and informative to be considered." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d 687, 691 (E.D. Mich. 2019) (citing *In re Carpenter Co.*, 2014 U.S. App. LEXIS 24707, at *3 (6th Cir. Sept. 29, 2014)); *see also Schechner v. Whirlpool Corp.*, 2019 U.S. Dist. LEXIS 31704, at *9 (E.D. Mich. Feb. 28, 2019) ("The Sixth Circuit has held that a district court does not abuse its discretion in applying *Daubert* to critical expert witnesses" at the class certification stage.) (citing *In re Carpenter*, 2014 U.S. App. LEXIS 24707, at *10-11).  *Daubert* review at the class certification stage is aimed at determining "whether the testimony and reports can be relied upon to establish that [the plaintiffs'] claims are proper for class adjudication."  *In re Flint Water Cases*, 2021 U.S. Dist. LEXIS 165251, at *175-77 (E.D. Mich. Aug. 31, 2021) (striking portion of expert's report at class certification stage because it was improper speculation); *see also In re Behr Dayton Thermal Prods., LLC*, 2015 U.S. Dist. LEXIS 194279, at *23-24 (S.D. Ohio Feb. 27, 2015) ("at the class certification stage, the relevant inquiry is 'whether an expert's opinion [is] sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and predominance'") (citation omitted).

## V.    ARGUMENT

### A.    A *Daubert* Analysis of Howard's Opinions Is Appropriate at the Class Certification Stage.

Because Plaintiff relies on Howard's opinions regarding "successful deliveries" and OFS in its attempt to certify a class, a *Daubert* analysis of those opinions is appropriate at the class certification stage.

The *only* evidence that Plaintiff has provided of successful transmissions of the faxes on its Class List is Howard's bare opinion that all faxes were successfully delivered.  (*See* ECF No. 115 at 3.)  This opinion, however, is too speculative to be considered at the class certification stage.  *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d at 691 (*Daubert* analysis at class certification stage is appropriate "to evaluate whether the expert's opinion is sufficiently reliable and informative to be considered").  Because this opinion serves as the foundation for Plaintiff's attempts to satisfy several requirements for class certification—including standing, numerosity, and predominance—and is also required to establish the ascertainability of the proposed class, the Court should evaluate now whether this opinion is too unreliable to satisfy Plaintiff's burden at class certification.  (*See* Defs.' Opp. to Pl.'s Mot. for Class Certification ("Opp."), ECF No. 125.)  Without any reliable evidence to establish the successful receipt of all the faxes on its putative Class List, Plaintiff's class cannot be certified.  *See, e.g.*, *Innovative Acct. Sols., Inc. v. Credit Process Advisors, Inc.*, 335 F.R.D. 106,

114 (W.D. Mich. 2020) (a plaintiff "whose telephone number was used to *successfully transmit* an unsolicited fax advertisement can bring a TCPA claim") (emphasis added).

Because the *only* evidence supporting Plaintiff's conclusion that the data shows successful fax deliveries is Howard's opinion, the "admissibility of this testimony is not only 'critical to class certification,' it is likely dispositive." *Kondash v. Kia Motors Am., Inc.*, 2020 U.S. Dist. LEXIS 181733, at *17 (S.D. Ohio Sept. 30, 2020) (citation omitted).  Accordingly, conducting a *Daubert* analysis of this opinion is appropriate at the class certification stage.  For example, in *Kia Motors*, the court addressed motions to exclude expert opinions that were "critical to the question of class certification" because the experts opined regarding class-wide defects in order to establish the predominance requirement of Rule 23(b)(3).  *Id*. at *19.  The court excluded the testimony of both experts as unreliable and speculative, and denied class certification because without the expert testimony, the plaintiffs failed to establish predominance.  *Id*. at *36; *see also In re Behr Dayton Thermal Prod.*, 2015 U.S. Dist. LEXIS 194279, at *24-25 (setting *Daubert* hearing to address whether expert's "opinion is sufficiently relevant and reliable for purposes of establishing Rule 23 criteria" where expert's opinion was crucial because it provided the "sole basis" for the plaintiffs' claim of class-wide damages).

Likewise, Plaintiff relies on Howard's opinion regarding whether cloud-based fax services have the capacity to print in an attempt to avoid the individualized inquiries necessary to establish that all class members received a fax on a "telephone facsimile machine." (ECF No. 115 at 22-23.)  The Court should thus evaluate the reliability of these opinions in determining whether Plaintiff has satisfied its burden of establishing all required elements for class certification.

### B.    Howard's Testimony Regarding Deliveries Is Inadmissible Because It Is Unreliable and Unpersuasive.

Howard's opinion that the Transmission Data is accurate and represents the number of successful fax deliveries is based entirely on speculation.  Not only does the record fail to support Howard's speculation, it directly undermines his opinions.  Howard's purported "analysis" of the data consisted entirely of reviewing the Sfax Data, comparing it to other reports purportedly with this "type of data," and then simply concluding that the data is accurate and conveys something it does not.  In fact, another court has already excluded similar opinions proffered by Howard in another fax TCPA case based on a *strikingly similar* report.  *Lyngaas I*, 2019 U.S. Dist. LEXIS 201986, at *39.  The court specifically found that "Howard's testimony does not meet the standards of reliability under *Daubert*, nor is the testimony persuasive."  *Id*.  The Sixth Circuit affirmed the

exclusion of Howard's opinions as unreliable to show the number of class-wide

successful fax transmissions.  *Lyngaas II*, 992 F.3d 412.[8]

**1.     The Record does not Support Howard's Speculative
Opinions regarding the Sfax "Deliveries" Data.**

In *Lyngaas*, as he does here, Howard proffered an opinion regarding the

number of successful fax deliveries.  *Lyngaas I*, 2019 U.S. Dist. LEXIS, at *39.

There, as here, "Howard's opinion regarding the successful number of fax

transmissions is premised entirely on the summary report logs, and Defendants

observe that he lacks any knowledge regarding the exact system or process used to

create the logs or the accuracy of the results."  *Id*. at *41.  Again, as he does here,

> Howard opined that the summary report logs were reliable
> because [the third party broadcaster] used T.30 faxing
> protocol in determining whether a fax transmission was
> successful. … In arriving at this conclusion, Howard
> testified that every fax machine employs the T.30 protocol
> and that he has never encountered any fax software or
> faxing device that does not employ T.30.

*Id*. at *42.  (*See* Ex. 6 ¶¶ 11, 23; Ex. 4 at 139:16-23, 193:9-24, 195:1-5,

229:24-230:5.)  In another opinion identical to one asserted here, Howard opines

that a successful delivery is determined by receipt of an MCF signal.  *Lyngaas I*,

2019 U.S. Dist. LEXIS 201986, at *42-43.  (*See* Ex. 6 ¶ 9.)

---

[8] Despite the Sixth Circuit affirming exclusion of his opinion eight months before
his deposition, Howard testified that ███████████████████████████████████
██████████████████████████    (Ex. 4 at 226:21-23.)

In *Lyngaas*, the defendant had hired a third party to send the faxes at issue, which in turned hired another third party to do so. *Lyngaas I*, 2019 U.S. Dist. LEXIS 201986, at *5. The court excluded Howard's conclusion regarding successful transmissions because "Howard did not review any information establishing that the [fax sender's] software and equipment was in good working order . . . ; that the proper procedures were implemented in programming and operating the equipment on those dates; or that the software was regularly tested for programming errors." *Id.* at *47. The same is true here. ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ (*See* Ex. 4 at 133:3-19.) Not only is there **no reference** to MCF signals in the data, there is **no evidence** that Scrypt ever confirmed that its data recorded "that that was a successful fax." There is no evidence in the record showing that the Sfax equipment was in working order, that the software was tested, that the procedures were implemented in programming and operating the equipment throughout the class period, or even how the Sfax Data sent from Sfax to Enclarity was created. (*See supra*, Section III.B.3; Ex. 5 at 13-18.) Because there is no witness knowledgeable about the Sfax Data, nor a shred of evidence regarding how it was created or whether it was accurate, there is no evidence showing that this data is reliable. *See* Fed. R. Evid. 703; *Lyngaas I*, 2019 U.S.

Dist. LEXIS 201986, at *48 ("even if an expert is entitled to rely on otherwise

inadmissible evidence, courts must nevertheless ensure that the data underlying the

expert's opinion is reliable").

Howard also 

(Ex. 4 at 192:5-193:7, 195:1-200:23; *see also* Ex. 7 at

307:22-25, 311:8-11, 317:9-12.)  Here, as in *Lyngaas*, there is no foundation for

Howard to conclude that the Sfax Data is accurate or reliable.  *Lyngaas I*, 2019

U.S. Dist. LEXIS 201986, at *41-42 (Howard "lacks any knowledge regarding the

exact system or process used to create the logs or the accuracy of the results.").[9]

---

[9] Howard's reliance on 12 returned VSF Faxes also does not support his conclusion
that all faxes on the Class List were successfully delivered.  (*See supra*,
Section III.B.4.)  Not only are those documents unauthenticated and inadmissible,
but these fax numbers and individuals are not on Plaintiff's putative Class List.
(*See supra*, n.4 & Section III.B.4.)  In any event, 12 allegedly returned faxes over a
four-year period are inadequate to support a conclusion that the Class List includes
▮▮▮▮ successfully transmitted faxes.  (ECF No. 115 at 3; *see* Ex. 5 at 15.)

████████████████████████████████████████████

████████████████████████████████████

███████████████████████████ (Ex. 6 ¶ 39.)  The "T.30 describes how faxes are

<u>transmitted</u> but not how summary report logs are <u>created</u>." *Lyngaas I*, 2019 U.S.

Dist. LEXIS 201986, at *47.  "[I]t does not describe how a successful transmission

is recorded and whether that process is reliable." *Id*.  (*See* Ex. 4 at 141:15-21

███████████████████████████████████████████

Howard's testimony regarding deliveries is therefore neither admissible nor

persuasive.  2019 U.S. Dist. LEXIS 201986, at *49 ("Even if Howard's testimony

were admissible, it would not be persuasive.").  As in *Lyngaas*, "Howard's

conclusions regarding the number of faxes successfully sent are premised entirely

on his evaluation of the summary report logs"—and the accuracy and reliability of

the data has not been, and cannot be, verified.  *Id*. at *50-51; *see also Lyngaas II*,

992 F.3d at 431 ("because of the lack of testimony describing how the report logs

were created or having anyone vouch for their accuracy, Howard's opinions

regarding the logs were both speculative and unpersuasive").

### 2.    Howard Cannot Establish the Reliability of the Data based on Assumptions and Speculation.

Faced with the same lack of foundation regarding the data here as he did in

*Lyngaas*, Howard resorts to assumptions and speculation.  ████████████████

███████████████████████████████████████████



(Ex. 6 ¶ 26.)

Howard's conclusory assertion is plainly insufficient.  As the *Lyngaas* court held,

"[a] summary report log is not inherently reliable simply because that type of

document is commonly relied upon by experts."  *Lyngaas I*, 2019 U.S. Dist.

LEXIS 201986, at *48.  Indeed, Howard's reliance on the "Deliveries" field in this

case is even more suspect than in *Lyngaas* because, as Howard conceded,

(Ex. 4 at 188:1-15; Ex. 7 at 310:24-311:7.)  Thus,

contrary to Howard's unsupported assertion that it is the "type of

document . . . commonly relied upon by experts,"

—and here, the record regarding

this specific data does not support Howard's speculation that it accurately

represents successful transmissions.  (Ex. 5 at 12-18.)

(Ex. 6 ¶ 24; *see also* Ex. 4 at 138:14-139:8

Plaintiff's assumption of automation based

on how the spreadsheets "look" cannot authenticate the data.  Even in *Lyngaas*,

where the third-party fax broadcaster testified that the logs were "automatically

generated," the court found that the plaintiff could not authenticate the data because it could not establish any factor of Federal Rule of Evidence 901(b)(9) if there was no evidence describing the process or system by which the data was created. *Lyngaas I*, 2019 U.S. Dist. LEXIS 201986, at *29. The third-party testimony was "insufficient to establish that the system or process by which those statements are made is reliable and accurate" because although the third party stated the logs were automatically generated, it "did not testify regarding <u>how</u> they were automatically generated" and "had no personal knowledge of the process by which the summary report logs were generated or whether the information contained in the logs was accurate." *Id*. at *33.

Here, there is even less evidence that would enable authentication of the data. There is **no evidence** regarding *how* the Sfax Data was generated at all, much less that it was "automatically generated." Howard merely asserts that ██████

████████████████████████████████████████████████

████████████ (Ex. 6 ¶ 24; *see* Ex. 7 at 318:20-319:20 ████████████████

████████████████████████████████████████████████

████████████ But, "[t]his reasoning is unpersuasive, as it relies on Howard's speculation and his general experience with summary report logs as opposed to evidence regarding the reliability of the logs presently at issue." *Lyngaas I*, 2019 U.S. Dist. LEXIS 201986, at *47-48; *see also Lyngaas II*, 992 F.3d at 431 ("By not

presenting anyone to attest as to how the logs at issue were created or to personally vouch for their accuracy, Lyngaas failed to satisfy the requirements of Rule 901.").

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ (Ex. 6 ¶ 37), Howard provides no page citations for *any* of his characterizations of the witness testimony.  In fact, these witnesses did ***not*** provide the testimony Howard claims they did.

Mr. Bergman testified he had no way to test the accuracy of the data. ██████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████ (Ex. 2 at 134:23-25) and did not identify any other Enclarity employee who regularly reviewed the "Deliveries" data from Sfax.  Moreover, Scrypt's witness testified that "[t]here were bound to be complaints" from clients about the accuracy of the Scrypt data.  (Ex. 1 at 25:23-26:19.)  Indeed, Scrypt also acknowledged potential errors in the data, given that "[t]here were bound to be occasions when faxes were considered to be delivered and they weren't, or vice versa."  (*Id*. at 26:21-27:14; *see also id*. at 29:6-20 (when repeatedly asked if Enclarity complained about "bad delivery data," the Scrypt representative testified that he "wasn't involved in the customer relationship with Enclarity").)

Thus, as it was in *Lyngaas*, Howard's opinion that all faxes on Plaintiff's

Class List represent successfully delivered faxes must be excluded.[10]

> ### C. Howard's Opinion That All Faxes, Even Those Received on an OFS, Are Received on a 'Telephone Facsimile Machine' Is Contrary to Law.

In an attempt to avoid the individualized inquiries required to identify which

class members received a fax on a "telephone facsimile machine," ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ (Ex. 6 ¶ 23; Ex. 4 at 145:17-146:6; *see* Opp.)  But Howard's

opinion contradicts the law.  On December 9, 2019, the FCC issued a declaratory

ruling clarifying that "an online fax service that effectively receives faxes 'sent as

an email over the Internet' and is not itself 'equipment which has the capacity . . .

to transcribe text or images (or both) from an electronic signal received over a

---

[10] Although the *Lyngaas* court considered the fax transmission reports at the class certification stage, despite later determining that they were inadmissible, this Court should evaluate the reliability of Howard's testimony in conducting its rigorous analysis at class certification.  The summary report logs in *Lyngaas* contained more detail about the transmission results—including a "result" field, "e.g., sent, busy, connection interrupted, invalid number, no answer." *Lyngaas I*, 2019 U.S. Dist. LEXIS 201986, at *27.  Here, in contrast, the data on its face does not purport to include "results" information that might provide more support for a successful transmission than the bare digits in the "Deliveries" field here.  Moreover, given that another court (affirmed by the Sixth Circuit) has already excluded a nearly identical opinion from Howard that contained the same flaws, it would not promote judicial efficiency to ignore those flaws now, only to exclude the opinions at trial.

telephone line onto paper,' *is not* a 'telephone facsimile machine,' and thus *falls*

*outside the scope* of the statutory prohibition." *Amerifactors*, 34 FCC Rcd. at

11950-51, ¶ 3 (emphasis added).  The FCC reasoned that "interpreting the TCPA

to mean that every 'computer' or 'other device' is a telephone facsimile machine,

merely because it could be connected to a printer, directly or indirectly, would be

[an] overly broad and . . . impermissibly expansive application of the TCPA[.]"  *Id*.

at 11954, ¶ 13 n.33.  Moreover, in ruling that an OFS is not a "telephone facsimile

machine," the FCC found that an OFS "cannot itself print a fax—the user of an

online fax service must connect his or her own equipment in order to do so."  *Id*. at

11953, ¶ 11.

███████████████████████████████████████████████

██████████████████████  (Ex. 7 at 296:12-18), Howard's position was expressed in

a comment submitted by another expert frequently appearing in TCPA fax cases.

*See* Biggerstaff Reply Comments at 4 ("each [fax server] has the capacity to

print").[11]  After considering the record, the FCC rejected Howard's position, ruling

that OFS are *not* "telephone facsimile machines" covered by the TCPA.  Thus,

Howard's opinion that all fax receiving equipment has the capacity to transcribe

---

[11] Howard also expressed disagreement with other statements from the FCC's
*Amerifactors* ruling.  (Ex. 6 ¶¶ 19-23.)  Though Howard may disagree with the
FCC, the *Amerifactors* ruling is entitled to deference by the Court and applies to
conduct that occurred prior to its issuance.  (Opp. at 12-15.)

the image to paper is improper because it contradicts a declaratory ruling by the FCC, and should be excluded.  *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1063 (9th Cir. 2008) (holding that "a party is not entitled to present evidence on an erroneous or inapplicable legal theory to the jury" and excluding expert testimony in part because it was an erroneous statement of law); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2019 U.S. Dist. LEXIS 50949 (S.D. Cal. Mar. 26, 2019) (excluding expert testimony in part because expert's legal interpretation was incorrect).

## VI.    CONCLUSION

Defendants respectfully request that the Court exclude Howard's opinions (i) regarding alleged successful deliveries of all faxes listed on Plaintiff's Class List and (ii) that all faxes, including faxes received via an OFS, are necessarily received on a "telephone facsimile machine" encompassed by the TCPA.

Dated:  February 22, 2022          MORRISON & FOERSTER LLP

By:  */s/  Tiffany Cheung*
                                   Tiffany Cheung (CA SBN 211497)
                                   425 Market Street
                                   San Francisco, CA  94105
                                   (415) 268-7000
                                   tcheung@mofo.com

## CERTIFICATE OF SERVICE

The undersigned is an attorney of record in this case and certifies that on February 22, 2022, the foregoing paper was served via electronic filing on Plaintiff's counsel of record.

By:  */s/  Tiffany Cheung*
Tiffany Cheung (CA SBN 211497)
425 Market Street
San Francisco, CA  94105
(415) 268-7000
tcheung@mofo.com

*Attorneys for Defendants*